**In re McLEAN INDUSTRIES, INC., et al., Debtors.**

**Bankruptcy Nos. 86 B 12238–86 B 12241 (CB).**

United States Bankruptcy Court, S.D. New York.

Sept. 17, 1991.

Olwine, Connelly, Chase, O'Donenell & Weyher, New York City by Ronald R. Jewell, for Janus Industries.

White & Case, New York City by Allan L. Gropper, for Creditors Committee.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Edward A. Smith, Asst. U.S. Atty., for I.R.S.

## DECISION ON DEBTORS' MOTION FOR AN ORDER DECLARING THAT TAX EVASION WAS NOT THE PRINCIPAL PURPOSE OF THE PLAN

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

### FACTS

On November 24, 1986, U.S.Lines, Inc., (now known as Janus Industries) together with the related companies Mclean Industries, Inc. and First Colony Farms, Inc., (collectively, the "Debtors") filed a petition for relief under chapter 11 of the United States Bankruptcy Code (the "Code"). In May 1989, Judge Buschman confirmed a plan of reorganization (the "Plan") which was subsequently amended and modified in February 1990.[1]

In March 1989, the Court approved the disclosure statement which was to be relied upon by creditors in voting on the Plan. At that time, the Debtors requested that the Internal Revenue Service (I.R.S.) issue a private letter ruling with regard to certain transactions contemplated by the Plan (the "Letter Ruling"). In the Letter Ruling, issued December 22, 1989, the I.R.S. advised the Debtors to formulate the Plan in compliance with the ownership change requirement of § 382($l$)(5) of the Internal Revenue Code (I.R.C.).[2] In addition, the letter ruling also advised the Debtors of a possible I.R.C. § 269 determination in the future.[3]

---

1. This case was originally assigned to Judge Buschman and was subsequently reassigned to this Court.

2. I.R.C. § 382 affects carryovers. Subsection (a) places limits on the amount of NOLS available to an entity that is acquiring a loss corporation. All ownership changes of loss corporations are limited in their use of NOLs. Subsection ($l$)(5) provides an exemption to subsection (a) if [1] the loss corporation is under the court's Title 11 jurisdiction *and* [2] the corporation's pre-ownership change shareholder and creditors own at least 50% of the voting power

and stock value of the corporation by virtue of their previous ownership.

3. Independently of I.R.C. § 382, I.R.C. § 269 also affects the ability of corporations to use NOLs. Section 269 provides that if a person acquires control of a corporation or a corporation acquires control of property in a carryover basis transaction from a corporation it does not control *and* the principal purpose is to evade tax by securing a tax benefit it would not otherwise enjoy, then, any deduction or credit can be disallowed.

U.S.Lines Inc. had been one of the world's largest containerized cargo shipping companies. Since the early 1980's, U.S.Lines had suffered harsh economic losses and was forced to sell many of its ships at foreclosure sales. Eventually, after many of its ships were seized by creditors in foreign ports, the Debtors were compelled to file for bankruptcy protection and discontinue their historic businesses. The Debtors remained in possession and after reorganization, emerged as Janus Industries.

The Plan accommodated the overwhelming volume of secured and unsecured creditors by issuing stock in the reorganized Debtors. The creditors installed new management with the requirement that the management also purchase the stock. In constructing the Plan, the Debtors and their creditors relied upon the availability of the net operating carrybacks and carryforwards ("NOLs"). In other words, the Debtors believed that no income tax would be payable on the reorganized Debtors because the NOLs would have been preserved by I.R.C. § 382(*l*)(5). In fact, the NOLs remain the reorganized Debtors' primary asset and appear essential for successful implementation of the Plan.

In August of 1990, the I.R.S. and the U.S. Treasury announced proposed regulations which, if adopted, would affect the Debtors by precluding their use of the NOLs. The proposed regulations give rise to a presumption that a plan has been made for the purpose of tax evasion absent more than an insignificant continuation of a debtor's historical trade or business.[4] The proposed regulations were drafted with the express purpose of counterbalancing the considerable possibility for tax fraud in business reorganizations where a company forms a completely new business enterprise. By placing the burden of proof on a debtor, the proposed regulations hope to ensure that a debtor is not reorganizing for the express purpose of tax evasion.

On October 26, 1990, the Debtors and the Unsecured Creditors' Committee (the "Committee") (collectively, "Movants") made the instant motion pursuant to § 105(a) of the Code seeking a finding that "tax evasion or avoidance" was not the principal purpose in proposing the Plan. The Movants request a factual determination of the type contemplated under § 1129(d) of the Code. In addition, the Movants wish to confirm that the NOLs vested as property of the reorganized Debtors upon confirmation of the Plan.

In response, the I.R.S. raises several arguments as to why the Movants' motion should be dismissed. The I.R.S. claims that the motion fails to present a justiciable case or controversy under Article III of the U.S. Constitution and therefore this court lacks subject matter jurisdiction. The I.R.S. also argues that the Movants' motion is prohibited by the Declaratory Judgment Act, 28 U.S.C. § 2201, because a bankruptcy court may not issue a declaratory judgment with regard to federal taxes. Finally, the I.R.S. maintains that it should not be collaterally estopped from making a § 1129(d) motion after a plan of reorganization has already been confirmed.

## DISCUSSION

As a preliminary matter, the I.R.S. arguments are misleading because they do not correctly define the issue before this court. Here, the Movants are requesting that this Court determine whether their Plan was made with the principal purpose of tax evasion or avoidance pursuant to § 1129(d) of the Code. The Movants are not asking that this Court ascertain the tax liability of the reorganized Debtors, but instead, simply want to insure that the Plan remains intact and fully capable of implementation.

If the Debtors had wanted a determination of tax liability, then the I.R.S. arguments would be applicable. However, because the I.R.S. regulations have yet to be officially adopted, this Court will not make findings as to the effect of the proposed

---

4. A *Forbes* article, dated February 4, 1991, succinctly summarized the Debtors' fears that the proposed I.R.S. regulations, possibly retroactive for all plans confirmed after 1986, would deprive them of some $400 million in loss carryforwards.

regulations. This Court will not render an advisory opinion as to the possible danger to the Debtors' NOLs because such a threat remains purely hypothetical at this juncture. A court can only determine an issue that presents a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). Until the regulations are officially promulgated, there can be no concrete controversy concerning the Debtors' tax situation.

Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, is not applicable since the Movants are not requesting a determination of the Debtors' tax liability. A court may issue a declaratory judgment when it "will serve a useful purpose in clarifying and settling legal relations in issue, and it will terminate and afford relief from uncertainty, insecurity and controversy...." *People Exp. Airlines, Inc. v. Andrew* 86 B.R. 644 (D.Colo.1988). However, the Debtors' tax liability will not become a legal issue until the regulations are adopted.

■ Accordingly, the only issue properly before this Court is whether post-confirmation, the Debtors can make a tax avoidance motion pursuant to § 1129(d). The Code, 11 U.S.C. § 1129(d) provides as follows:

Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 USC § 77e). In any hearing under this subsection, the government unit has the burden of proof on the issue of avoidance.

The statute on its face states that the party making the tax avoidance motion must be a governmental unit. The Debtors clearly do not qualify under that definition. Because the language of the Code is so intelligible, this Court cannot avoid the obvious meaning of the words in the statute.

"When a court refuses to follow the clear and unambiguous terms of a statute and instead chooses to impose its own views and modification, it is in effect legislating." *In Re Pan Am Corp.* 124 B.R. 960, 966 (Bankr.S.D.N.Y.1991).

There has been a dearth of case law on this particular question and both parties here cite only one case. In *In Re Rath Packing Co.* 55 B.R. 528 (Bankr.N.D.Iowa 1985) the court held that a chapter 11 debtor was entitled to have the § 1129(d) issue litigated after the I.R.S. orally raised the issue at a plan modification hearing. When the government later argued that it did not want the issue decided because it had not filed a formal § 1129(d) motion, the court held that it would not allow the I.R.S. to *ex post-facto* "bring an action in tax court several years from now ..." given the "thousands of hours of effort by the Debtor, its employees, the creditors and the Court." 55 B.R. at 535. *Rath Packing* can be distinguished from the case *sub judice* in two ways: first, the I.R.S. has never raised the § 1129(d) tax avoidance issue in any proceedings before this Court, and second, the Plan was confirmed several months before the issue was raised by the Debtor.

While *Rath Packing* appears to imply that the Debtor can bring § 1129(d) on its own, the statute on its face clearly prohibits this. The legislative intent also indicates otherwise. Congressional records state that the Senate Amendment to the House Bill modified the provision to the extent that the bankruptcy court need make a determination of the tax avoidance issue only if it is asked to do so by the appropriate tax authority. Also, the Senate Amendment implied that if the tax authority does not make a request for a ruling for the purpose of the plan, the governmental unit would not be barred from later asserting a tax avoidance motive after the reorganization. However, the final House Amendment "does not provide a basis by which a tax authority may collaterally attack confirmation of a plan of reorganization other than under § 1144 of the Code." 124 Cong Rec. H11115 (daily ed. Sept. 28,

1978); S17432 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini).

The apparent intent of Congress with respect to a post-confirmation issue of tax avoidance implies that if the I.R.S. or any other governmental unit wishes to raise the § 1129(d) tax avoidance purpose, they must do so before or during the confirmation period. Otherwise, parties in interest must make a motion for revocation pursuant to § 1144 of the Code. In order to make an § 1144 motion, the I.R.S., the party in interest here, would have had to have made the motion within 180 days after the date of the entry of the order of confirmation. Because it has been more that 180 days since the Plan was confirmed in May 1989, the I.R.S. would be precluded from even challenging the Plan for fraud under § 1144.

Under the confirmation order, the Court found that the Plan (i) complied with the applicable provisions of the Code, (ii) had been proposed in good faith and not by any means forbidden by law, and (iii) was feasible and provided adequate means for implementation. (Confirmation Order ¶¶ BB., CC., and DD. at p. 8). To allow the I.R.S. to bring a collateral action against the order of confirmation would defeat bankruptcy jurisdiction and judicial economy.

## CONCLUSION

In the future, if the proposed regulations are ultimately adopted, then the appropriate issue would be whether a retroactive application of the I.R.C. would divest the Debtors of their NOLs. Additional issues would involve jurisdictional conflicts between the tax authorities and the bankruptcy courts. However, the Debtors' motion for an order declaring that tax evasion is not the principal purpose of the Plan of reorganization is denied.

The Debtors are directed to settle an order on five days notice consistent with this decision.