**In re HARTMAN MATERIAL HANDLING SYSTEMS, INC., Allis–Chalmers Corporation, d/b/a American Air Filter Company, Inc., et al., Reorganized Former Debtors.**

**ALLIS–CHALMERS CORPORATION, and John T. Grisby, Jr., Reorganization Trustee, Plaintiffs,**

v.

**Fred T. GOLDBERG, Jr., Commissioner of Internal Revenue, Internal Revenue Service, and UNITED STATES of America, Defendants.**

**Bankruptcy Nos. 87 B 11225(BRL)– 87 B 11242(BRL). Adv. No. 90–6665A.**

United States Bankruptcy Court, S.D. New York.

June 8, 1992.

Davis Polk & Wardwell by Lewis Kaden, Daniel Brockett, New York City, for Reorganization Trustees.

Otto B. Obermaier, U.S. Atty. by Eric Nelson, Asst. U.S. Atty., New York City, for I.R.S.

## DECISION ON REQUEST FOR DECLARATORY RELIEF

BURTON R. LIFLAND, Chief Judge.

### INTRODUCTION

This matter is before the Court on a summary judgment motion by Hartman Material Handling Systems, Inc., Allis Chalmers Corporation, d/b/a American Air Filter Company, Inc., et al. ("A–C"). A–C seeks interpretation of this Court's confirmation order in the former debtor's bankruptcy case and declaratory relief on the retroactive effect of Internal Revenue Service ("IRS") regulations interpreting 26 U.S.C. § 269 enacted on January 6, 1992 (the "Regulations" [1]). The IRS has filed a cross-motion seeking dismissal of this adversary proceeding.

The Regulations suggest that a finding that the principal purpose of a bankruptcy plan is not tax avoidance at the time of confirmation has no impact on the IRS's ability to use § 269 of the Internal Revenue Code, as amended ("IRC") to attack a former debtor's post-confirmation use of net operating losses ("NOLs"). If accepted as an accurate interpretation of the statutes, the Regulations could affect A–C by precluding its use of NOLs due to an ownership change made pursuant to A–C's plan

of reorganization. At issue is the scope of this Court's finding that the principal purpose of the plan was not tax avoidance and the *res judicata*/collateral estoppel effect of findings made pursuant to confirmation of a plan of reorganization.

### BACKGROUND

On June 29, 1987, A–C filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On October 31, 1988, this Court found that the principal purpose of A–C's plan of reorganization was not tax avoidance and confirmed the plan. The confirmation order was not appealed and the plan was consummated on December 2, 1988. Pursuant to the plan, which included the carryover of $298 million [2] in NOLs, A–C sold most of its businesses and distributed the proceeds of the sale, together with common stock of the reorganized company, to the creditors and shareholders of the company.

Historically, A–C provided health care benefits to its employees upon retirement. A major objective of the reorganization in its allocation of values was to maintain the health benefits relied upon by A–C employees. Because of the prohibitive costs of procuring health insurance on the open market, two retiree health trusts (the "Health Trusts") were established to provide health benefits to A–C retirees who held claims as unsecured creditors.

These Health Trusts were part of Class 8 under the plan. Class 8 consisted of all allowed unsecured claims against A–C in excess of $1000. According to the Disclosure Statement, these claims aggregated between $591 and $641 million. *Class 8 claims included retiree health claims aggregating $455 million and a Pension Benefit Guaranty Corporation (the "PBGC") claim under a promissory note for $23.6 million* as well as other nonretiree related claims. Under the plan,

---

**1.** For complete text of the Regulations, *see* 57 Fed.Reg. 343 (Jan. 6, 1992).

**2.** According to A–C's First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code ("Disclosure Statement") dated September 14, 1988, $298 million of NOLs would be available to the reorganized entity in post-con-

firmation years. *Id.* at 94. However, Robert M. Qualls, Vice President and Chief Financial Officer of A–C, stated in his affidavit that the amount of A–C's NOL's now amounts to "approximately $500 Million". (Qualls Affidavit p. 6).

Class 8 received approximately $100–125 million in cash and 51 percent of the stock in reorganized A–C. The Disclosure Statement lists $6.12 million as the value of this portion of the stock.[3]

Because the amount of stock transferred to the Health Trusts and to other unsecured creditors was in excess of fifty percent of the shares issued by the reorganized entity, A–C recognized that it was threatened by a potential attack under § 269 and § 382 of the IRC.[4]

IRC § 269 [5] provides for the disallowance of tax benefits, such as NOLs, when tax avoidance is the principal purpose of acquiring control of a corporation. IRC § 382 limits the use of NOLs for companies which undergo an ownership change. The policy underlying these provisions is that while a company which suffers net operating losses is entitled to certain tax benefits, those tax benefits should not be freely marketable. In other words, their purpose is to prevent trafficking of NOLs; only those parties which have suffered a tax loss should receive the benefits of such loss. IRC § 382(l)(5) limits the disallowance of NOLs for certain ownership changes occurring in bankruptcy by treating selective creditors who receive stock as if they were actually equity holders (owners) of the corporation. These qualified creditors are considered owners for tax purposes and therefore there is no ownership change when they receive stock under a plan. If equity holders and these qualified creditors maintain at least a fifty percent ownership interest, IRC § 382(l)(5)(A) dictates that the restrictive NOL limitation rules of IRC § 382(a) and (b) shall not apply.

Due to the importance of the NOL carryovers to the A–C plan of reorganization, the plan was confirmed only after the receipt of a favorable private letter ruling from the IRS concluding that the retirees were qualified creditors under IRC § 382(l)(5)(E).[6] A similar ruling could not be obtained under § 269, because Revenue Procedure 88–3, 1988–1 C.B. 579, prevents the IRS from issuing private letter rulings on the application of IRC § 269.

Because the NOLs and other tax benefits would be eliminated if there were a second ownership change within two years following the ownership change that took place pursuant to the plan,[7] all shares of the common stock of the reorganized A–C were deposited in an escrow account. This process was intended to insure that a second ownership change would not occur and that the NOLs would be preserved. It has not been disputed that, to this point, the prior equity holders along with the retirees have maintained at least a fifty percent ownership interest.

---

3. Disclosure Statement at 32.

4. Only a brief overview of §§ 269 and 382 is provided herein. For a more thorough discussion of these sections, *see generally*, B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders*, para. 16.20–16.25 (5th Ed.1987 & Supp.1992).

5. 26 U.S.C. § 269 states in relevant part:
 (a) In general. —If—
 
 \* \* \* \* \* \*
 
 (2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, ...
 and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit or other allowance which such person or corporation would not otherwise enjoy, then the Secretary may disallow such deduction, credit, or other allowance. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.

6. IRC § 382(l)(5)(E)—ONLY CERTAIN STOCK TAKEN INTO ACCOUNT—For purposes of subparagraph (A)(ii), stock transferred to a creditor in satisfaction of indebtedness shall be taken into account only if such indebtedness—
 (i) was held by a creditor at least 18 months before the date of filing of the title 11 or similar case, or
 (ii) arose in the ordinary course of the trade or business of the old loss corporation and is held by the person who at all times held a beneficial interest in such indebtedness.

7. *See* 26 U.S.C. § 382(l)(5)(D) (1988).

In the spring of 1989, after consummation of the plan, the IRS notified A–C that its future use of NOLs might be challenged under IRC § 269. In August 1990, the IRS issued proposed regulations to "clarify" the interaction of §§ 382, 269 of the IRC and § 1129(d) of the Bankruptcy Code. On January 6, 1992, these Regulations were made final.

Through this motion, A–C seeks to establish the bounds of its confirmed and consummated plan of reorganization and this Court's authority to issue a declaratory judgment.

### RELIEF REQUESTED

■ Specifically, A–C requests an order:

(a) determining the *res judicata* and collateral estoppel effect of this Court's confirmation finding that the principal purpose of A–C's plan of reorganization was not tax avoidance; and

(b) determining that the IRS is equitably estopped from applying the Regulations to Allis–Chalmers based on the private letter ruling.[8]

**8.** Although this Court cannot issue a binding judgment with respect to equitable estoppel because the claim is premature (*see res judicata* and collateral estoppel discussion, *infra* ), it cannot help but notice the difficulty of maintaining this claim.

A–C was aware of the fact that the IRS does not issue private letter rulings with respect to § 269. Nevertheless, A–C claims that because there was no specific reference to § 269 in the private letter ruling, the omission led the company to believe that § 269 would not threaten the future use of NOLs. This contention is in accord with the text of the private letter ruling which (routinely) states:

No opinion is expressed as to the tax treatment of this proposed transaction under any other provisions of the Internal Revenue Code and regulations, or about the tax treatment of any conditions existing at the time of, or effects resulting from, the proposed transactions that are not specifically covered by the above rulings.

A–C's reliance claim is further undermined by its own Disclosure Statement. Following a lengthy discussion of the private letter ruling and § 382 of the IRC, the Disclosure Statement states:

Notwithstanding a corporation's compliance with the rules ... [regarding § 382], the IRS

In the alternative, A–C requests that this Court review and rule on the accuracy of the interpretation of the statutes set forth in the Regulations as they would relate to a post-confirmation use of NOLs. It requests an order:

(a) determining that the proposed regulations are inconsistent with the statute and unreasonable insofar as they provide that an exchange of creditors' claims for stock in a transaction governed by Section 382(*l*)(5) of the IRC gives rise to an acquisition of control by such creditors at the time of the exchange for purposes of Section 269;

(b) determining that the presumption created by the new regulations relating to continuity of business enterprise is inconsistent with the statute and unreasonable insofar as it would disallow a net operating loss carry-forward in transactions, such as Allis–Chalmers', which qualify for the special limitation of Section 382(*l*)(5) and which bear no aspects inconsistent with the policies underlying Section 382(*l*)(5);[9] and

is authorized under Section 269 of the Tax Code to disallow any deduction, allowance or credit (e.g., the use of NOLs) if control of a corporation was acquired principally for tax avoidance purposes.... Moreover, Section 269 gives the IRS considerable power to challenge transactions involving NOL's. Accordingly, *there can be no assurance that the IRS will not challenge the utilization of Reorganized A–C's NOL's on the basis of Section 269 or that such a challenge, if asserted, would not be sustained.*

Disclosure Statement at p. 96 (emphasis added). Thus, A–C as well as all other parties in interest were put on notice of the possibility of a § 269 attack on A–C's future use of NOLs. Therefore, the record before the Court does not provide a basis to hold that the doctrine of equitable estoppel bars a subsequent § 269 action.

**9.** The regulations as enacted make this presumption effective only for confirmed bankruptcy reorganizations after August 14, 1990. (*see* Treas.Reg. § 1.269–3(d)(1–2) (1992)). Thus, the presumption of tax avoidance in the final regulations exempts Allis–Chalmers, which completed its plan of reorganization on October 31, 1988. Therefore, this prayer for relief is no longer necessary, nor requested. (Letter from Lewis B. Kaden, Esq. to Judge Burton R. Lifland of 1/6/92, at 2).

(c) determining that even if the regulations are valid and applicable to Allis–Chalmers, no disallowance should be made for Allis–Chalmers' net operating loss carryforwards because the principal purpose of the plan of reorganization was not tax avoidance.

These requests for relief suggest that A–C seeks a ruling that since this Court made a ruling in the confirmation order that the principal purpose of the plan was not tax avoidance and that ruling was not appealed, the IRS is foreclosed from ever challenging A–C's (or some successor's) use of the NOLs. In its reply memorandum, however, A–C qualifies its position and states:

Of course, we agree that the Government is not foreclosed from challenging under Section 269 particular transactions in which Allis–Chalmers may engage in the future. A determination of collateral estoppel or res judicata in this action would simply prevent the IRS from contending that the principal purpose of creditors in acquiring Allis–Chalmers through the reorganization was tax avoidance.

Reply Memorandum at p. 18–19, n. 3.

## DISCUSSION

### I. The Regulations.

This dispute centers on the following section of the recently enacted Regulations:

In determining for purposes of Section 269 of the Internal Revenue Code whether an acquisition pursuant to a plan of reorganization in a case under title 11 of the United States Code was made for the principal purpose of evasion or avoidance of Federal income tax, the fact that a governmental unit did not seek a determination under 11 U.S.C. 1129(d) is not taken into account and any determination by a court under 11 U.S.C. 1129(d) that

the principal purpose of the plan is not avoidance of taxes is not controlling.

Treas.Reg. § 1.269–3(e) (1992).

 With this provision, the IRS has clearly manifested its belief that no court ruling can prevent it from using § 269 of the IRC to disallow a former debtor's post-confirmation use of NOLs. This Court is at a loss to decipher how the power to promulgate regulations gives the IRS the authority to determine the effect of an order of a court. Certainly, to the extent that they are inconsistent with statutes, regulations are not binding on courts. *See United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Thus, when confronted with apparently conflicting statutes, courts are compelled to focus on the statutes at issue rather than the IRS's (a party in interest's) interpretation of the statutes. The Regulations are nothing more than the IRS's position on how the applicable statutes should be interpreted.

### II. Section 1129(d), Tax Avoidance Purpose and Subject Matter Jurisdiction.

Bankruptcy Code § 1129(d) provides:

Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes.... In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

 Because only a party in interest that is a governmental unit may make a request under § 1129(d), the IRS asserts that this Court lacked authority under § 1129(d) to make a ruling that the principal purpose of the plan was not tax avoidance. While this Court disagrees,[10] this

---

**10.** It is true that A–C (debtors) could not request a § 1129(d) ruling. *See In re McLean Indus. Inc.,* 132 B.R. 267, 270 (Bankr.S.D.N.Y.1991). However, this Court is not bound by the IRS's inaction. Although § 1129(d) alone does not explicitly grant this Court the authority to make a § 1129(d) ruling *sua sponte,* § 105(a) does. It provides that "No provision of this title providing for the raising of an issue by a party in

interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (1988). Consequently, this Court has the discretion to raise the § 1129(d) tax avoidance issue if it deems such a determination necessary or appropriate.

dispute is largely inconsequential. Independent of § 1129(d), this Court cannot fairly consider plan confirmation in a case such as this and ignore the obvious tax avoidance question. Congress has given the bankruptcy courts the responsibility for determining whether a reorganization plan is proper, including tax considerations. *See* 28 U.S.C. § 157(b)(1) (1988); 11 U.S.C. § 1129 (1988); 11 U.S.C. § 505 (1988) and *In re Rath Packing Co.*, 55 B.R. 528 (Bankr.N.D. Iowa 1985) ("Bankruptcy Court is clearly the proper forum for determining whether a debtor's reorganizing plan has tax avoidance as its principal purpose."). It has also granted the courts the means to fulfill such responsibility without resort to § 1129(d). *See* § 1129(a)(1)–(3).

█ *In re Maxim Indus., Inc.*, 22 B.R. 611 (Bankr.D.Mass.1982) provides an excellent example of a court independently monitoring a specious tax avoidance strategy which came before it in a plan. In *Maxim*, under its plan of reorganization, the debtor, a shell corporation with net operating losses, "acquired" a successful company with large pre-tax earnings. Sensing the tax avoidance motivation of the "reorganization", the court insisted that the IRS be served with the plan and disclosure statement. Yet, neither the IRS nor any other party in interest objected to confirmation. Nevertheless, the court denied confirmation citing Bankruptcy Code §§ 1129(a)(1) (plan must comply with applicable provisions of Title 11) and (a)(3) (good faith) and noting that the plan was "constructed of nothing more than gossamer wings and sophisticated tax legerdemain." *Id.*, at 613. In essence, the court found that the principal purpose of that plan was tax avoidance and denied confirmation. Thus, implied in every confirmation order is a finding that the principal purpose of the plan is not tax avoidance. If the principal purpose of the plan were tax avoidance, the plan would not be proposed in good faith and consequently would not meet the requirements of § 1129.[11]

█ The legislative history simply reinforces this analysis. *See* 124 CONG.REC. H11115 (daily ed. Sept. 28, 1978); S17432 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini). Under the Senate Amendment, if the tax authority did not request the bankruptcy court to rule on the purpose of the plan, the tax authority would not be barred from later asserting a tax avoidance motive with respect to allowance of a deduction or other tax benefit claimed after the reorganization. The House Amendment adopted the substance of the Senate Amendment, but did not provide a tax authority any means to collaterally attack confirmation of a plan of reorganization other than under section 1144. Thus, Congress apparently intended that the tax avoidance motivation of the plan be reviewed at the time of confirmation. *Accord McLean Indus.*, 132 B.R. 267 at 270. Section 1144 of the Bankruptcy Code contains the only post-confirmation attack on a plan that Congress specifically sanctioned. It provides that a fraudulent plan can be revoked within 180 days after the confirmation order is entered. 11 U.S.C. § 1144. Since more than 180 days have passed since the A–C plan was confirmed, the I.R.S. is prohibited from collaterally attacking the plan on any grounds that could have been raised before or at the time of confirmation. *Id.*

## III. Prayers for Relief.

A–C's requests for relief can be broken down into two types: those requesting a clarification of the scope and effect of this Court's confirmation order (i.e., *res judicata* and collateral estoppel) and those requesting the Court to enter a declaratory judgment with respect to the application of the Regulations to the former debtor.

---

11. *See In re Rath Packing Co.*, 55 B.R. at 535: although Section 1129(d) of the Code apparently does not require the Court to determine the tax avoidance issue unless requested to do so by a governmental unit who is a party in interest, the Court cannot fairly consider plan confirmation and ignore the obvious tax avoidance question. Congress has given the bankruptcy courts the trust and responsibility for determining whether a reorganization plan is proper, including tax considerations. *See* 28 U.S.C. sec. 157(b)(1); 11 U.S.C. §§ 1129 and 505.

These alternative forms of relief will be addressed separately.

### A. Clarification of Confirmation Order.

■ It is well settled that this Court has authority to interpret and enforce its own orders. *See U.S. v. Unger*, 949 F.2d 231, 234 (8th Cir.1991) (a bankruptcy court may explicitly retain jurisdiction over aspects of a plan related to its administration and interpretation);[12] *In re Johns–Manville Corp.*, 97 B.R. 174, 179–81 (Bankr.S.D.N.Y. 1989).[13] In its request for relief on the grounds of *res judicata* and collateral estoppel A–C is asking this Court to interpret and enforce its confirmation order to preclude the IRS from using its interpretation of § 269 as set forth in the Regulations against A–C's interests. Though A–C's concerns are well-founded and legitimate, · no finding or order of this Court has such a preclusive effect. As will be discussed, while this Court's finding that the principal purpose of A–C's plan of reorganization was not tax avoidance would be an inevitable consideration in any subsequent § 269 action, neither the principles of *res judicata* nor collateral estoppel dictate a result in any action not specifically contemplated in the confirmation order.

### 1. *Res Judicata* and Collateral Estoppel.

Allis–Chalmers repeatedly uses the terms *res judicata* and collateral estoppel in conjunction. In fact, they are two distinct doctrines. The Supreme Court effectively laid out the distinction in *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), a case involving the application of these doctrines to tax matters.

[Res Judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of a action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissable matter which might have been offered for that purpose.' *Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed. 195].

But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, 'but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' *Cromwell v. County of Sac, supra*, 353....

These same concepts are applicable in the federal income tax field. *Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action.* Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit.

---

12. Article XI of A–C's plan of reorganization provides that this Court retains jurisdiction "(B) to determine any and all disputes arising under or related to the Plan, the Retiree Health Trust Agreements, [and] the Reorganization Trust Agreement ...;" and "(L) to enter such orders as may be necessary or appropriate in aid of confirmation or to facilitate implementation of the Plan."

Article VII, furthermore, provides that this Court shall retain "exclusive jurisdiction over the Trust, the Trustee, and the Trust assets as provided for in the Plan, including the determination of all controversies and disputes arising under or in connection with the Trust."

13. *See also, In re Doty*, 129 B.R. 571, 586–88 (Bankr.N.D.Ind.1991), *citing In re Terracor*, 86 B.R. 671 (D.Utah 1988); *In re Coral Air, Inc.*, 40 B.R. 979, 982 (V.I.1984) (Sections 105(a) and 1142(b) of the Code allow the court to issue such post-confirmation orders as are necessary to implement the terms of a plan.)

*Sunnen* 333 U.S. at 597–598, 68 S.Ct. at 719–720.

Under the foregoing analysis, any use of § 269 to disallow a deduction in some future tax year will be a separate cause of action from the tax avoidance determination that was made in 1988. *See Peck v. C.I.R.*, 904 F.2d 525, 527 n. 3 (9th Cir.1990). Thus, *res judicata* cannot bar such a § 269 attack.

Therefore, if the IRS is precluded from using § 269 to attack the tax consequences of the ownership change that took place pursuant to A–C's plan of reorganization, such a bar can only result from the application of collateral estoppel. In order for collateral estoppel to bar a post-confirmation suit under § 269, the identical question of that statute's application to A–C must have been litigated. Because there is little question that there would be significant redundancy in such post-confirmation litigation the confirmation findings should be given substantial deference. Nevertheless, this Court cannot find that all post-confirmation uses of § 269 are absolutely barred by collateral estoppel.

The Second Circuit has recently noted that for collateral estoppel purposes "[i]ssues that may bear the same label are nonetheless not identical if the standards governing them are significantly different." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir.1991), *cert. denied*, 112 S.Ct. 1169 (1992); *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.1987), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Although the governing standard is principal purpose of tax avoidance under § 1129

of the Bankruptcy Code as well as § 269 of the Internal Revenue Code, the issues under the two statutes are not identical.[14]

A confirmation ruling that the principal purpose of a plan is not tax avoidance is significantly different from a § 269 ruling because the two rulings are made pursuant to different "factual frames of reference." *See Jim Beam*, 937 F.2d at 734. In *Jim Beam*, the holder of the trademark "beam" and other related marks with respect to various alcoholic beverages brought suit alleging trademark infringement and state-law claims of trademark dilution and false advertising against seller of stout under the name "beamish." The Second Circuit held that a finding of likelihood of confusion in a prior registration proceeding applying 15 U.S.C. § 1052(d) (mark cannot be registered if it so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive") did not collaterally estop defendant from litigating the issue of confusion under 15 U.S.C. § 1114(1)(a) and (b) (infringement actions may be brought against those using marks when "such use is likely to cause confusion, or to cause mistake or to deceive.") in a trademark infringement suit, because a different standard is used in the two proceedings. In reaching this decision, the court noted that although in both proceedings the relevant statutory provisions refer to whether the use of a mark is "likely to cause confusion", "the standards by which that likelihood is judged are different because the factual frame of reference used by the adjudicating body is different." *Id.* at 734.

---

**14.** The IRS, relying on the Restatement of Judgments 2d section 28(4) (1982), asserts that the most glaring impediment to finding that § 1129(d) puts before a court the "identical" tax avoidance question that § 269 raises is that while the burden of proof under § 1129(d) is on the IRS, the burden of proof in a post-confirmation § 269 action is on the former debtor, taxpayer.

There are two responses to this contention. First, as previously discussed, there is no need to resort to § 1129(d) for this Court to make a finding as to the principal purpose of a bankruptcy plan, so the burden of proof set forth in

that provision does not necessarily apply. Second, a majority of courts have held that with respect to tax litigation of a debtor in bankruptcy, the IRS bears the burden of proof despite the fact that the taxpayer would bear the burden of proof in the identical litigation outside bankruptcy. *See Matter of Federated Dept. Stores, Inc.*, 135 B.R. 962, 969–970 (Bankr.S.D.Ohio 1992) (holding that in § 269 action in bankruptcy, burden of proof is on government). Therefore, the possible varying burden of proof may not prevent the application of collateral estoppel.

Similarly, the factual frame of reference under a confirmation ruling on tax avoidance is different than that of a § 269 ruling under the IRC. Section 269 is used to disallow deductions that are claimed on a tax return. Thus, it cannot be employed to prevent the use of NOLs *until* they have been claimed as a deduction. If the IRS attempts to disallow a deduction through application of § 269, a judicial determination of whether the underlying transaction was for tax avoidance purposes "requires an examination of *all* circumstances and events leading up to *and following* the acquisition." *Federated Department Store*, 135 B.R. 962, 971 (Bankr.S.D. Ohio) (emphasis added). If the NOLs have not been claimed as a deduction at the time of confirmation, the court making the ruling is only able to examine the events leading up to the transaction. It does not have the opportunity to examine the events following the transaction. Consequently, a finding of tax avoidance at confirmation is not made pursuant to the same factual frame of reference as a finding bearing the same label under § 269. Therefore, the confirmation ruling on tax avoidance cannot collaterally estop the IRS from making a subsequent § 269 challenge to attempts to use the NOLs after transactions not specifically contemplated in A–C's plan of reorganization.

### 2. Declaratory Relief Regarding Prospective Tax Disputes.

In the remaining prayers for relief, A–C requests that the Court rule on the merits of a post-confirmation tax dispute by applying the Regulations to the reorganized debtor.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in pertinent part, that:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought....

28 U.S.C. § 2201(a).

▆▆▆▆ Thus, in order for this Court to issue a declaratory judgment with respect to federal taxes, § 505 or § 1146 [15] must provide the jurisdictional grant. While A–C alleges that § 505(a) provides this Court with the jurisdiction to make such a ruling, no authority supports its analysis.

Section 505(a)(1) provides:

Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

A–C suggests that the tax issue it seeks to have determined is "any tax". Section 505 cannot be read so broadly. "Any tax" does not mean any tax of any entity at any point in time. The Second Circuit made this point in *In re Brandt–Airflex Corp.*, 843 F.2d 90 (2d Cir.1988). In *Brandt–Airflex*, the Court of Appeals joined those courts that have held that a bankruptcy court cannot determine the tax liability of non-debtor third parties. *Id.* at 95. *See e.g., United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986); *In re Success Tool and Mfg. Co.*, 62 B.R. 221 (Bankr. N.D.Ill.1986). Similarly, under the circumstances presented here, it would be improper for this Court to determine in advance the post-confirmation NOL tax rights of a former debtor who has not yet attempted to use its NOLs. As previously discussed, a § 269 action had not ripened at the time of confirmation (and still has not ripened) and, therefore, any ruling would have to consider post-confirmation events which were not even known at the time of confirmation to determine a speculative future tax liability of the former Debtor. Such a ruling would establish a precedent for a former debtor to return to bankruptcy

---

**15.** *See* footnote 16 *infra.*

court to have any and all of its future tax consequences determined. Neither § 505 nor any other provision of the Code provide authority for such a result.

▮ Moreover, A–C does not request a specific ruling on a particular transaction, but a general ruling on the post-confirmation tax effects of the ownership change that took place pursuant to its plan of reorganization. Even if A–C had requested this relief pre-confirmation, such relief is impracticable and § 505 does not provide any authority for this Court to grant it.[16] The type of result that A–C seeks is closely analogous to the post-confirmation relief that the liquidating trustee was denied in *Holywell Corp. v. Smith*, —— U.S. ——, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992).[17] In *Holywell*, a liquidating trust was created pursuant to the debtor's plan of reorganization. A liquidating trustee was appointed to administer the trust and distribute the proceeds consistent with the plan. Although the plan called for post-confirmation sales of property, it provided no specific provision for the payment of taxes arising from the sales. The liquidating trustee brought a motion in the bankruptcy court to confirm that the debtor had no obligation to pay any taxes. The bankruptcy court, district court and Eleventh Circuit all found that since the IRS did not object to the plan at the time of confirmation, the IRS was barred from altering the plan by requiring payment of the taxes. In an unanimous decision, the Supreme Court reversed stating:

> The United States is not seeking from the trustee any taxes that became due prior to [confirmation]..... Even if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims. Cf. 11 U.S.C. § 101(10) (1988 ed. Supp. II) (defining "creditor" as used in § 1141(a) as an entity with various kinds of pre-confirmation claims).

*Id.* at p. 1027–1028.

Applying the foregoing to this case, no pre-confirmation finding can finally determine tax issues which do not arise until after confirmation. Indeed, the NOLs may never be used and, if they are, the IRS has emphasized to this Court that it may not seek to disallow them under § 269. *See* February 25, 1991 Transcript, p. 28–29.

## CONCLUSION

Through the Regulations, the IRS has highlighted an unfortunate loophole in the finality of the reorganization process and

**16.** Only 11 U.S.C. § 1146(d) provides for prospective tax determinations resembling the relief A–C seeks. It states:

The court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title and under the law imposing such tax, of the plan.

While a determination under § 1146(d) might have the type of *res judicata* effect that A–C seeks, such a ruling may only be obtained as to State or local taxing authorities. In fact, the Senate had proposed to include the IRS in this provision, but such reference was ultimately deleted from the statute as it was finally enacted. *See* Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2d Sess. (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. In any event, § 1146(d) appears to contemplate only a pre-confirmation determination of tax liability. ("The court may authorize the *proponent* of a plan ...") (emphasis added).

**17.** The facts before the Fifth Circuit in *In re Wingreen Co.,* 412 F.2d 1048 (5th Cir.1969) also presented very similar issues to the court. In *Wingreen,* the trustee petitioned the district court for an order directing the IRS to "show cause whether, under the proposed plan of reorganization the continuing and reorganized corporation would have available to it the full tax loss carry forward benefits available to the debtor or a lesser benefit, and whether the ruling would be binding on the Service." *Id.* at 1050. The district court entered an order requiring the IRS to audit the debtor's books and to determine the debtor's future tax benefits within 45 days. On appeal, the Fifth Circuit reversed, finding that the IRS did not owe any duty to the trustee to provide the service he requested and, consequently, the district court had no jurisdiction to force the IRS to provide such a service. *See also In re Inland Gas Corp.,* 241 F.2d 374, 378–379 (6th Cir.1957) *cert. denied,* 355 U.S. 838, 78 S.Ct. 58, 2 L.Ed.2d 50 (1957).

the need for reconciliation and modification of the relevant statutes.[18] The degree of uncertainty in the current statutory scheme jeopardizes the viability of many reorganizations. It is essential that a reorganizing company know how to structure its reorganization to preserve its tax benefits. In many cases, this certainty will be necessary to determine the feasibility of a plan. *See* § 1129(a)(11).[19] Section 382(*l*)(5) and the private letter ruling process go a long way to providing such assurance. The IRS now seeks to use § 269 to disrupt this process.

This Court believes that the IRS's proposed use of the general provisions of § 269 to attack the tax avoidance purpose of transactions that a court has reviewed and that § 382 was specifically enacted to address is an unfair and improper construction of the statutes.[20] Indeed, the Regulations suggest an ill-fated system for all involved. While the IRS may take some satisfaction in the outcome in this case as it may mean that some favorable tax attributes are never used, its sister governmental organizations may not view the IRS's endeavors with the same glee. The government as a major creditor in many mega cases has an interest in successful reorganizations. The PBGC and the Environmental Protection Agency, for example, will be harmed along with all other creditor types. The government safety net agencies and the courts, furthermore, may find that they have more customers from liquidating companies than anticipated.

In this case, retiree health benefits and the PBGC, treated with felicity under the A–C plan, stand to lose a substantial amount of bargained for value, based in no small measure on the extant Regulations and the consequent infirmities in the § 382 private letter ruling process. Thus, this case is an example of how the IRS's victory can be the Government's quandary; it suggests that the "the most feared creditor *in* the United States"[21] could become the creditor most feared *by* the United States.

Nevertheless, under the circumstances presented here and for the reasons previously discussed, this Court cannot now rule on the issues that A–C seeks to have determined.

Thus, for all the foregoing reasons, the plaintiff's motion is denied and the Government's cross-motion is granted. The complaint is dismissed without prejudice to A–C's right to assert this Court's confirmation finding in response to any future IRS action under § 269 or, where appropriate,

**18.** The Regulations are contrary to established custom, if not law, and have received widespread criticism since they were proposed. *See, e.g.,* Asofsky, "Reorganizing Insolvent Corporations Today," 47 NYU INST. ON FED. TAX § 40.04 (1989) ("no case can be found in which acquisition of control by creditors in a bankruptcy reorganization was held to trigger IRC section 269") Richard Reichler, "Presumption of Tax Avoidance Motive in Prop.Regis. Affects Many Corporate Bankruptcies", 74 J.TAX'N 140, (March 1991) ("The unleashing of Section 269 as a weapon to strip the tax attributes from companies that have reorganized in Chapter 11 is an unwelcome surprise.").

In its report urging the Treasury to quickly modify the proposed regulations because of their in terrorem effect on pending reorganizations, the Tax Section of the New York State Bar Association emphasized that:

section 269 should play a limited role in ownership changes subject to section 382(1)(5). [In § 269], Congress expressed a policy of fostering the rehabilitation of bankrupt corporations in the hands of shareholders and qualified creditors by excluding acquisition of control by these persons from the general limitations of section 382. A different set of detailed requirements applies under section 382(*l*)(5), including the limiting definition of qualified creditors, the regulatory application of the option attribution rules, the reductions in tax attributes and the elimination of losses if a subsequent ownership change takes place within two years.

*Tax Analysts, Tax Notes Today, December 27, 1990, Report on Proposed Treasury Regulations Under Sections 269 and 382, (December 27, 1990)* ("New York State Bar Report").

**19.** *See also* Mark A. Frankel, *Federal Taxation of Corporate Reorganizations,* 66 Am.Bankr.L.J. 55, 97–100 (1992).

**20.** *See,* New York State Bar Report at p. 11 (suggesting that the Regulations should be modified to provide that "a determination by the bankruptcy court that the principal purpose of a plan of reorganization is not tax avoidance should be included as a factor indicating that section 269 does not apply.")

**21.** *In re Solis,* 137 B.R. 121, 130 (Bankr.S.D.N.Y. 1992) (emphasis added).

to defend such action on the basis of judicial estoppel.[22]

Submit an order consistent with this opinion.

**22.** *See Reynolds v. C.I.R.,* 861 F.2d 469, 472–474 (6th Cir.1988) (a tax case describing judicial estoppel as a doctrine applied in particular circumstances when a party takes inconsistent positions; it is a rule against "playing 'fast and loose with the courts,'", "blowing hot and cold as the occasion demands,", or "hav[ing] [one's] cake and eat[ing] it too,". (citations omitted)).