In re INDIAN MOTORCYCLE TRADEMARK LITIGATION.

In re Indian Motorcycle Company, Inc., Debtor.

In re Indian Motorcycle Apparel and Accessories Co., Inc., Debtor.

In re Indian Motorcycle Manufacturing Company, Inc., Debtor.

Eller Industries, Inc., Sterling Consulting Corp., a Colorado corporation, as receiver for the Indian Motorcycle Manufacturing, Inc., a New Mexico corporation, David J. Noonan, Chapter 7 Trustee of the estate of Indian Motorcycle Company, Inc., and Indian Motorcycle Manufacturing Company, Inc., Plaintiffs,

v.

Indian Motorcycle Manufacturing, Inc., and Stephen M. Rodolakis, Chapter 7 Trustee for Indian Motorcycle Company, Inc., Indian Motorcycle Apparel and Accessories, Co., Inc., and Indian Motorcycle Manufacturing Company, Inc., et al., Defendants.

Nos. Civ.A. 02–11522–REK, Civ.A. 95–CV–777.
Bankruptcy Nos. 93–41954–HJB, 93–41955–HJB, 94–42288–HJB.

United States District Court, D. Massachusetts.

July 30, 2002.

Gregory C. Smith, Fairfield & Woods, PC, Denver, CO, for Sterling Consulting Corporation.

Todd P. Blakely, Sheridan, Ross, PC, Denver, CO, for Stephen M. Rodolakis.

Michael Mandelman, Milwaukee, WI, pro se.

## MEMORANDUM IN EXPLANATION AND PRACTICE AND PROCEDURE ORDER

### Order No. 1

YOUNG, Chief Judge.

A Case Management Conference (CMC) in these Consolidated Proceedings is set for 9:00 a.m., on Wednesday, September 4, 2002, in Courtroom 3 of the United States District Court for the District of Massachusetts.

The next CMC is set for November 15, 2002, at 9:00 a.m., in the same location.

### MEMORANDUM IN EXPLANATION

#### I.

These Consolidated Proceedings have come to this court as a result of an agreement among United States District Judge Rita Weinshienk of the District of Colorado, Magistrate Judge Schlatter of that District, and United States Bankruptcy Judge Henry J. Boroff of the District of Massachusetts, which was accepted and approved by Chief Judge William Young, acting for the United States District Court of the District of Massachusetts. Under the terms of that agreement, Judge Weinshienk and Judge Schlatter transferred proceedings in the District of Colorado to the District of Massachusetts on condition that Bankruptcy Judge Henry J. Boroff recommend withdrawal of the reference to the Bankruptcy Court and that the District Court for the District of Massachusetts approve that recommendation and withdraw the reference to the Bankruptcy Court of all these Consolidated Proceedings.

The consolidation having been ordered, the Consolidated Proceedings have been assigned to the undersigned judge.

## II.

The first in time of filing of the separate proceedings now consolidated in this Civil Action No. 02–11522–REK in the District of Massachusetts was the Chapter 7 Case, *In re Indian Motorcycle Company, Inc.,* Bankruptcy Case No. 93–41954–HJB.

The following summarized history of the various proceedings is borrowed primarily from the Recommendation of Bankruptcy Judge (Boroff) That District Court Withdraw the Order of Reference.

On July 15, 1993, the involuntary Chapter 7 petition was filed in the District of Massachusetts against Indian Motorcycle Company, Inc., and Indian Motorcycle Apparel and Accessories Company, Inc., affiliated corporations. *Id.* at 2.

In February of 1994, Indian Motorcycle Manufacturing, Inc., filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of North Carolina. Venue was transferred to the United States Bankruptcy Court for the District of Massachusetts. This case was later converted to Chapter 7. *Id.*

In January of 1995, Bankruptcy Judge Boroff ordered that these three bankruptcy estates be jointly administered, and he appointed a single Chapter 7 Trustee. *Id.*

Later in 1995 a federal receivership proceeding was commenced in the United States District Court for the District of Colorado against Indian Motorcycle Manufacturing, Inc., as Civil Action 95–Z–777 (D.Colo.) (the Receivership Proceeding). Sterling Consulting Corp. was appointed Receiver. *Id.* at 3.

In October 1995 the Receiver claimed to have purchased 100% of the stock of the bankruptcy debtors as well as certain (but not all) claims against them. The Receiver then claimed to be both a creditor of the bankruptcy debtors and the owner of their equity. *Id.*

The Trustee and the Receiver engaged in ongoing disputes, negotiations, and ligation, and focused primarily on trademarks and intellectual property claims. Over time, these disputes and efforts to resolve them have resulted in contentious and strained relationships among the Trustee, the Receiver, and many other individuals and entities. *Id.* at 3–4.

One of the early incidents in this ongoing controversy was the filing by the Receiver on December 12, 1995, of a Motion for Approval of Receiver's Request for Procedural Order Approving a Procedural Plan for a Coordinated Sale and Coordinated Interim Administration of the Massachusetts Bankruptcy Cases and the Receivership. *Id.* at 3–4.

Differences between the parties remained, but they too were settled, and the Trustee and the Receiver subsequently filed their "Joint Motion for Approval Stipulation Regarding Coordinated Sale and Coordinated Administration." Bankruptcy Judge Boroff approved that Stipulation. In essence, the parties agreed that the value in the Trademarks was so great that all creditors in both the receivership and bankruptcy cases would be paid in full. Accordingly, the Receiver and the Trustee agreed to put aside temporarily their conflicting claims to the Trademarks and work together to locate a buyer. Further, in light of the seemingly overlapping jurisdiction by the Bankruptcy Court and the Colorado District Court over the Trademarks until title thereto was determined, it was agreed that the Receiver would take the lead role in locating and negotiating with an appropriate buyer, but no sale could be consummated absent the joint approval of the Colorado District Court and the Massachusetts Bankruptcy Court. *Id.* at 4.

Problems continued, notwithstanding the Receiver's earlier promises to ensure that all bankruptcy creditors would be paid in full. When a buyer (IMCOA Licensing American, Inc. ("IMCOA")) for the Trademarks was located in late 1998, the Receiver sought in the sale agreements to impose a cap on funds to be paid on account of the bankruptcy estate creditors or exclude some bankruptcy estate creditors altogether. *Id.* at 4.

When Bankruptcy Judge Boroff indicated his inclination not to approve the sale under those conditions, the Trustee and the Receiver agreed to settle their newest dispute by placing in escrow under their joint signature and control the sum of $3.5 million of the total sale price of $17.3 million (plus other consideration). *Id.* at 4.

Although the Receiver reserved his right to assert competing claims to those escrowed funds, the Trustee assured Bankruptcy Judge Boroff that the amount escrowed was more than sufficient to pay all bankruptcy estate claims in full. *Id.* at 4–5.

Accordingly, on January 13, 1999, Bankruptcy Judge Boroff approved the sale to IMCOA. But, in a separate unpublished Memorandum of Decision of even date, he severely criticized the Receiver for what appeared to him to be inappropriate conduct, including actions seemingly designed to goad a jurisdictional dispute between the Massachusetts Bankruptcy Court and the Colorado District Court. *Id.* at 5.

Not unexpectedly, following the approval of the sale, the Receiver and the Trustee had multiple disagreements as to the disposition of the $3.5 million held in escrow, including claims by the Receiver that he was entitled to certain of the funds. But, on September 9, 1999, the Trustee filed a "Motion of Trustee to Authorize and Approve Mutual Release and Settlement Agreement with Sterling Consulting Corporation, as Receiver" (the "Settlement Motion"; the Release and "Settlement Agreement"). In summary, the Release and Settlement Agreement provided for immediate payment to the Receiver out of the escrowed funds on account of a $550,000 superpriority lien claim asserted by the Receiver; allowance (but subordinated to allowed bankruptcy estate claims) of a claim allegedly purchased by the Receiver (the "Mand[el]man Judgment"); an acknowledgment by the Trustee that payment in full of bankruptcy claims would not include postpetition interest; a promise of payment of the residue to the Receiver after bankruptcy estate claims had been paid in full; mutual releases; and complex arrangements for the division of the seemingly overlapping jurisdiction by and between the Bankruptcy Court and the Colorado District Court in view of the likelihood that various (contemplated and non-contemplated) disputes might arise. The escrowed funds were thus entrusted exclusively to the Trustee, with the Receiver's claims to be asserted in the same fashion as might be asserted by another creditor or equity security holder. *Id.* at 5–6.

The Release and Settlement Agreement provided, in pertinent part:

6. *Escrowed Funds/Signature Requirements.* Promptly, and in no event later than seven business days after payment of the Superpriority Lien in the amount of $550,000, the receiver and the Trustee shall take any and all actions and execute and deliver any and all documents or instruments as may be necessary to *terminate the joint signature requirement with respect to the Escrowed Funds or to transfer them to a new account such that the Trustee shall have sole signature authority with respect to the balance of the Escrowed Funds. The Trustee thereafter shall have sole*

*signature authority with respect to the Escrowed Funds, provided, however, that the Trustee shall not make any payment except on account of Allowed Claims, and shall not make any payment on account of Allowed Claims that exceed the amount allowed or estimated in the Schedule filed with the Colorado District Court . . ., unless he obtains the prior consent of the receiver or an order of the Massachusetts Bankruptcy Court, after notice to the receiver, authorizing such payment.*

. . . .

11. *Jurisdiction and Venue.* The Trustee and the receiver agree and acknowledge that due to the *in rem* nature of the Bankruptcy and the Receivership, disputes between the Trustee and the receiver tend to arise in both cases. In an effort to minimize jurisdictional disputes between the Bankruptcy Court and the Colorado District Court, the Trustee and the receiver agree to the following concerning the appropriate venue for any action or legal proceedings to enforce the Settlement Agreement or any of its terms or for the recovery of any loss by the Trustee or the receiver, or for any disputes between the Trustee and the receiver:

. . . .

c. Receiver's Claims in the Bankruptcy Estate—Any dispute regarding any claim (including the Superpriority Lien) that has been filed in the Massachusetts Bankruptcy Court by the receiver shall be . . . [heard in the Bankruptcy Court first, but subject to limited review by the Colorado District Court] . . . For purposes of this paragraph, the receiver's claims shall include, without limitation, the Superpriority Lien, the Mandelman Judgment, and any distribution of the Escrowed Funds *except to holders of*

*allowed claims for administrative expenses and to third party claimants in the Bankruptcy Estate.*

*Id.* at 6–7 (emphasis added by Judge Boroff in his Recommendation).

The purpose and effect of the Release and Settlement Agreement was threefold. First, the agreement reflected a final resolution of the dispute over the funds to which the bankruptcy estates were entitled from the sale of the Trademarks. Second, the agreement reflected a final resolution as to the nature of the Receiver's claims against the bankruptcy estates and how those claims would be treated. Third, the agreement delineated the jurisdiction of each of the Bankruptcy Court and the Colorado District Court as future disputes might arise. The Colorado District Court approved the Release and Settlement Agreement first; and, subsequently, on September 21, 1999, over the objection of the United States trustee, Bankruptcy Judge Boroff granted the Settlement Motion, thereby granting the Trustee leave to enter into the said Agreement. *Id.* at 7–8.

On or about October 29, 1999, the Trustee filed all of the relevant bankruptcy estate tax returns with the Internal Revenue Service, together with a request for an expedited audit under 11 U.S.C. § 505(b). Pursuant to the provisions of the Release and Settlement Agreement, the Receiver simultaneously field with the Colorado District Court two motions seeking the Colorado District Court's determination of the Tax liability of both the receivership and the bankruptcy estates. The United States objected in the Receivership Proceeding on jurisdictional grounds, claiming that the Colorado District Court lacked jurisdiction to determine the tax liability of the bankruptcy estates. The Colorado District Court overruled that objection, and ruled that it had jurisdiction over all matters which might affect the receiver-

ship estate, including the right to determine the tax liability of the bankruptcy estates. The United States appealed the Colorado District Court determination to the Tenth Circuit Court of Appeals. *Id.* at 8.

In the meantime, in late December of 1999, the Trustee and the Receiver became convinced that, for reasons not relevant here, final distribution of monies to creditors of the bankruptcy estates before year's end afforded significant tax advantages for each estate. At that time, however, the Receiver and the Trustee still found themselves at odds with the United States with respect to the administrative tax liability, if any, of the bankruptcy estates to the United States. The ongoing dispute with the United States remained an obstacle to a final distribution. A plan to overcome that obstacle was formed by the Receiver and the Trustee. *Id.* at 8–9.

On December 22, 1999, the Trustee filed his final accounts in each of the bankruptcy cases and asked for expedited determination of their approval. At the hearing, the Trustee and the Receiver suggested that Bankruptcy Judge Boroff authorize the Trustee's request for approval of a final distribution to creditors of the bankruptcy estates. The sum of approximately $437,000 would be distributed to the Receiver on account of the administrative tax claim, but be held in escrow for the United States pending the Colorado District Court determination of the amount due. *Id.* at 9.

The United States objected. It argued again that the Colorado District Court had no jurisdiction to determine the tax obligations of the bankruptcy estates, notwithstanding the Receiver's claim to the residue of the escrowed funds. It further argued that the administrative tax obligations of the bankruptcy estates might approximate as much as $1.2 million. *Id.* at 9.

Attempting to accommodate the concerns of the Untied States (but concededly over its objection), Bankruptcy Judge Boroff, on December 30, 1999, estimated the claim of the United States at $1.2 million for the purposes of distribution, pursuant to 11 U.S.C. § 502(c) and granted the Trustee leave, inter alia, to (i) transfer $1.2 million to the Receiver to be held in escrow subject to the Colorado District Court administrative tax determination, and (ii) pay the remainder of the $3.5 million allocation to bankruptcy estate creditors. *Id.* at 9.

By Order of December 22, 1999, Bankruptcy Judge Boroff made the following determinations:

22.

. . . .

(b) *Delivery of $1.2 Million dollars to Receiver to be held in escrow.* The Trustee will deliver a check in the amount of $1.2 Million Dollars to the Receiver to be deposited into an interest bearing account and held in escrow for distribution as described below.

. . . .

(d) *Disposition of funds to be held in escrow by Receiver.* The Receiver agreed to hold the $1.2 Million Dollars distributed to him in escrow. Those funds will be held in escrow to be paid out in the following order of priority and at the following times: (i) first, to the IRS in the amount necessary to fully satisfy all federal tax liabilities ... (ii) next, to all holders of allowed general unsecured claims in the Bankruptcy Cases until said claims have been paid 100% of the allowed amount as set forth in the Accounts, and (iii) then any remaining funds to the Receiver on accounts of the Mandelman

Judgment and pursuant to the Release and Settlement Agreement.

(e) *Interest on the escrowed funds.* Any interest accruals on the $1.2 Million held by the Receiver in escrow shall be retained by the Receiver.

. . . .

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby . . .

ORDERED and ADJUDGED that the Receiver's Agreement to act as escrow agent for purposes of making distributions to the IRS (if any) and to general unsecured creditors is approved and the Receiver shall hold in escrow all $1.2 Million Dollars delivered to it pursuant to the Modifications for the benefit of the IRS and the general unsecured creditors of the Debtors. The Receiver will act as an escrow agent with no discretion to disburse funds other than according to the terms of this Order. Notwithstanding the foregoing, the Receiver is authorized to retain any interest accruals on the $1.2 Million Dollars to be distributed to it[.]

*Id.* at 9–10.

Thus, by complementary orders, Bankruptcy Judge Boroff of Massachusetts and District Judge Weinshienk and Magistrate Judge Schlatter of Colorado attempted to place jurisdiction over outstanding administrative tax claims against the bankruptcy estate in the District Court for the District of Colorado. This effort failed. *See United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)*, 259 B.R. 458 (2001), *vacated and superseded by United States v. Sterling Consulting Corp.*, 261 B.R. 800 (1st Cir. BAP 2001) and by *Sterling Consulting Corp. v. United States*, 245 F.3d 1161 (10th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 921, 151 L.Ed.2d 885 (2002). *See* Recommendation of Bankruptcy Judge (Boroff) That District Court Withdraw the Order of Reference at 10–11.

Further effects at global settlement have failed. The Judicial Panel on Multidistrict Litigation was urged to become involved, and seriously considered doing so, but on June 17, 2002, declined jurisdiction even though encouraging the parties to continue their efforts to find creative solutions to the unstable jurisdictional conflicts that have thus far blocked final resolution of this wide ranging controversy. *Id.* at 14.

### III.

The matter is now before this court. In order to expedite proceedings and provide for fair process aimed at ultimate resolution of this controversy on the merits, the court makes the order immediately below.

**Practice and Procedure Order No. 1**

### I.

**A. Cases and Parties' Claims Consolidated**

(1) The cases that have been consolidated in these proceedings and to which this and later Practice and Procedure Orders apply are the following:

In re INDIAN MOTORCYCLE COMPANY, INC., Chapter 7, Case No. 93–41954–HJB

In re INDIAN MOTORCYCLE APPAREL AND ACCESSORIES CO., INC., Chapter 7, Case No. 93–41955–HJB

In re INDIAN MOTORCYCLE MANUFACTURING COMPANY, INC., Chapter 11 Converted to Chapter 7, Case No. 94–42288–HJB

ELLER INDUSTRIES, INC, STERLING CONSULTING CORP., a Colorado corporation, as receiver for the Indian Motorcycle Manufacturing, Inc., a New Mexico corporation, DAVID J.

NOONAN, Chapter 7 Trustee of the estate of Indian Motorcycle Company, Inc., and INDIAN MOTORCYCLE MANUFACTURING COMPANY, INC. v. INDIAN MOTORCYCLE MANU-FACTURING, INC., and STEPHEN M. RODOLAKIS, Chapter 7 Trustee for Indian Motorcycle Company, Inc., Indian Motorcycle Apparel and Accessories, Co., Inc., and Indian Motorcycle Manufacturing Company, Inc., *et al.*, United States District Court for the District of Colorado, Civil Action No. 95–CV–777.

(2) Service List. Attached as Attachment A (July 30, 2002) is the list of persons and entities on whom service is to be effected.

(3) Until further notice, each document presented to the Clerk of the United States District Court for the District of Massachusetts in these Consolidated Proceedings is to have the same caption as this Order, followed by the descriptive caption of the document itself. If the document applies to less than "All Cases," the case numbers to which it applies must be substituted for "All Cases."

## B. Procedures for Modification of the List of Cases, Parties, Claims, and Issues in These Consolidated Proceedings

(1) Any party wishing any modification (either expansion or reduction) of the scope of cases, parties, and issues included in these Consolidated Proceedings may file a motion so requesting. The motion must identify the case or proceeding that is pending in some court that the party wishes included in these Consolidated Proceedings, and must state with particularity the modification of the scope of cases, parties, claims, and issues requested.

(2) Any motion for modification will be on the agenda for hearing and decision at the next Case Management Conference unless good cause is shown for deferring ruling to allow reasonably warranted time for interested persons and entities to be heard by the court before the court's decision on the matter is made.

## II.

The court invites and encourages participation in these proceedings by all persons and entities having an interest and standing to assert that interest. The court extends this invitation not only to those subject to the in personam jurisdiction of this court but as well to those who claim not to be subject to in personam jurisdiction here except by voluntary appearance.

## III.

(1) Each party who wishes to participate in these Consolidated Proceedings must do so by an attorney authorized to practice in this court or by a written submission filed on or before August 30, 2002.

(2) It is the regular practice of the undersigned judge to permit participation in a CMC by telephone, if adequate notice has been given to make possible the necessary telephonic arrangements for the CMC. The court's facilities will not take more than two such telephone calls. Thus, if more than two seek to participate by telephone, the persons so requesting must make their own arrangements for a consolidated call to the court.

(3) If it is not feasible to have such a call arranged for telephonic participation in the CMC of September 4, 2002, the court will proceed as far as it can with those who are able to participate, to identify issues to be considered in these proceedings and set a schedule, and will then notify all parties and give them an opportunity to respond before any substantive rulings are made.

(4) The Clerk of this court will send information copies of this Memorandum and Order to District Judge Rita Weinshienk and Magistrate Judge Schlatter of the District of Colorado, and to all District Judges and Bankruptcy Judges of the District of Massachusetts.