**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 10 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STERLING CONSULTING
CORPORATION, a Colorado
corporation, as receiver for the Indian
Motorcycle Manufacturing Inc., a New
Mexico corporation,

        Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

        Intervenor-Appellant.

No. 00-1317

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-Z-777)

---

Thomas J. Clark (Kenneth W. Rosenberg, with him on the briefs),  Tax Division,
Department of Justice, Washington, D.C., for Appellant.

John M. Tanner (Ann C. Kiley with him on the brief), Fairfield and Woods, P.C.,
Denver, Colorado, for Appellee.

---

Before **BRISCOE, BALDOCK,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

This case comes before the court on interlocutory appeal. The government appeals the district court's assertion of jurisdiction over the determination of tax liabilities in a receivership action and the district court's imposition of a deadline upon the IRS for such tax determinations. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(b), this court holds the Declaratory Judgment Act prohibits the district court from determining corporate tax liabilities in a receivership action and the Anti-Injunction Act bars the district court from enjoining the IRS from assessing and collecting taxes for failure to evaluate tax returns by the court-imposed deadline. The judgment of the district court is therefore **reversed**.

## II. BACKGROUND

In April 1995, Eller Industries, Inc., a Colorado corporation, brought this receivership action in the United States District Court for the District of Colorado against Indian Motorcycle Manufacturing, Inc. (IMMI), a New Mexico corporation. The district court placed IMMI into receivership, appointing Sterling Consulting Corporation as the receiver. During this time, IMMI was one of several companies embroiled in a dispute over the Indian Motorcycle trademark. Three other companies involved in the dispute, Indian Motocycle Company, Inc., Indian Motocycle Apparel & Accessories, Inc., and Indian Motocycle

Manufacturing, Inc.[1], have been in bankruptcy in Massachusetts since before 1995, all sharing a common bankruptcy trustee.

In late 1995, the receiver acquired all of the stock of the bankruptcy estates and Indian Motor Company (IMC) from Michael Mandelman. In 1997, the government intervened in this action to enforce federal tax liens for individual income taxes owed by Mandelman against any forthcoming distribution by the receiver. The assets of the receivership estate and bankruptcy estates were combined for sale and eventually sold. Pursuant to an agreement between the bankruptcy trustee and the receiver, $3.5 million of the proceeds from the sale of assets was allocated to the bankruptcy estates and placed in an escrow account with the district court in Colorado. The account was established for the payment of claims owed by the bankruptcy estates, subject to the receiver's right to assert competing claims.

In October 1999, the receiver filed a motion with the district court in Colorado asking the court to determine that the bankruptcy estates owed no additional federal taxes above that shown on their tax returns for 1999.[2] The

---

[1] Indian *Motocycle* Manufacturing, Inc. is not to be confused with the company in receivership, Indian *Motorcycle* Manufacturing, Inc.

[2] The original motion included the years 1993 through 1999, but the bankruptcy trustee, the receiver, and the IRS agreed that the tax returns for the years before 1999 were correct with the exception of one deduction.

government opposed this motion, claiming the district court lacked jurisdiction to determine the tax liabilities of debtors who were in bankruptcy in Massachusetts.

In December 1999, the bankruptcy trustee filed an emergency motion in Massachusetts Bankruptcy Court seeking approval of his final accounts and distribution of the estates. The government objected to the motion and distribution. During the hearing on the motion in Massachusetts, the government indicated that the tax liabilities of the bankruptcy estates for 1999 would amount to $1.2 million if the top corporate tax rate was applied to the $3.5 million allocated to the bankruptcy estates from the sale of the combined estates. It further indicated that the proposed escrow with the receiver of approximately $437,000 to cover the potential tax liabilities of the bankruptcy estates was insufficient.

The bankruptcy court entered an order approving the trustee's amended final accounts. In its order, the bankruptcy court attempted to "cede jurisdiction of the determination of the Bankruptcy Estates tax liabilities to the [district court in Colorado]." The bankruptcy court ordered that $1.2 million be disbursed from the bankruptcy estates to the receiver and that the receiver hold the money in escrow for the purpose of covering the potential 1999 tax liabilities of the

debtors.  The government appealed the bankruptcy court's findings, conclusions, and order to the Bankruptcy Appellate Panel for the First Circuit.[3]

In the meantime, the receiver's motion in federal district court regarding the bankruptcy estates' 1999 income tax liabilities was referred to a magistrate judge.  In January 2000, the magistrate overruled the government's jurisdictional objections and ordered the government to respond to the merits of the receiver's motion.  In an order entered on March 20, the district court adopted the magistrate's report and ruled that the court had jurisdiction over all matters affecting the receivership estate, including all questions incident to the preservation, collection, and distribution of assets.  The court further ruled that it had jurisdiction to determine the bankruptcy estates' liabilities under 28 U.S.C. § 1334(a), which confers upon the district courts "original and exclusive jurisdiction of all cases under title 11," and 28 U.S.C. § 1334(b), which confers upon the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The receiver filed a second motion in district court, asking the court to determine that IMMI and IMC owed no additional federal taxes beyond the

---

[3] The Bankruptcy Appellate Panel disposed of this appeal on March 13, 2001, holding that the bankruptcy court erred in ceding jurisdiction to the federal district court in Colorado and reversing the bankruptcy court's order which capped the determination of the debtors' tax liability at $1.2 million and made a final distribution of the estates.

amount set forth in their tax returns for certain designated years. The government opposed the motion on jurisdictional grounds, but the magistrate determined that the court had jurisdiction to determine IMMI's and IMC's tax liabilities. The magistrate ordered the IRS to address the merits of IMMI's and IMC's tax returns by August 31, 2000, and to address the merits of the 1999 tax returns for the bankruptcy estates by July 1, 2000. The magistrate further ordered that in the event the IRS failed to comply with the court's order, "the [tax] returns shall be deemed to have been completed correctly, and the estates shall be deemed to owe no further taxes." The government objected to the magistrate's order.

In an order entered on July 19, 2000, the district court affirmed the magistrate's order and overruled the government's objections. It extended until August 31, however, the deadline by which the IRS needed to address the merits of the bankruptcy estates' tax liabilities. In its order, the district court indicated that the issue of whether it had jurisdiction over the IRS's tax liability determinations for entities within the receivership estate was a controlling question of law as to which there was substantial ground for a difference of opinion.[4] In a separate order entered the same day, the district court also certified the question of whether it had the authority to set enforceable deadlines for such

---

[4] A thorough reading of the district court's order suggests that it means to include the three debtor corporations in its reference to "receivership estate."

tax determinations. The court concluded that an immediate appeal of these questions would advance the ultimate termination of the case, thereby satisfying the conditions of 28 U.S.C. § 1292(b). This court stayed the district court orders pending appeal.

## III. DISCUSSION

This court's jurisdiction arises pursuant to 28 U.S.C. § 1292(b), which allows this court to review the district court's interlocutory order. *See Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1271 (10th Cir. 1994). The controlling questions of law certified by the district court involve (1) its jurisdiction over the government's tax liability determinations for entities within the receivership estate, which includes the debtor corporations in this case, and (2) the district court's authority to set enforceable deadlines for these tax determinations.[5] On appeal, the government claims the district court lacks jurisdiction to determine the income tax liabilities of the five corporations. Further, it argues the district court lacks jurisdiction to order the IRS to complete a tax examination before the expiration of the statutory deadline and to permanently enjoin the assertion of tax liabilities if the IRS fails to meet the

---

[5] Also before this court is the government's motion to strike the receiver's first submission of supplemental authority. Because the receiver's submission contains legal arguments, this motion is granted. *See* Fed. R. App. P. 28(j) ("The letter [informing the court of supplemental authority] must state *without argument* the reasons for the supplemental citations. . . ." (emphasis added)).

court's deadline. This court reviews questions of law, including determinations of jurisdiction, *de novo*. *See Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 571 (10th Cir. 2000).

A. Determination of Tax Liabilities

The Declaratory Judgment Act empowers courts to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). The grant of authority, however, explicitly excludes cases "with respect to Federal taxes." *Id.* The Act exempts specified proceedings from this general exclusion, thereby allowing declaratory judgments in certain cases that involve federal taxes. *See id*. The exemptions include civil actions involving an antidumping or countervailing duty proceeding and actions brought under 26 U.S.C. § 7428, which allows for a declaratory judgment with respect to tax-exempt status, and 11 U.S.C. §§ 505 or 1146, both of which provide for a determination of taxes for entities in bankruptcy. *See id*. In its motions to the district court regarding the tax liabilities of the five corporations, the receiver requests relief that the Declaratory Judgment Act specifically prohibits the court from granting. Absent the application of an exception to the statutory prohibition, the Declaratory Judgment Act plainly bars the district court from declaring that the corporations in question owe no additional federal taxes. To

hold otherwise would impede the government's ability to assess and collect taxes. *See Wyo. Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 932-33 (10th Cir. 1996).

As for IMMI, the corporation in receivership, and IMC, a corporation owned by the receiver, there are no relevant exceptions under the Declaratory Judgment Act that permit the district court to determine their tax liabilities. In its motion to the district court regarding the tax liabilities of IMMI and IMC, the receiver did not invoke any exception to the statutory bar and it is apparent from this court's own review that none apply. Thus, the Declaratory Judgment Act explicitly prohibits the district court from granting the requested relief for IMMI and IMC.

In its motion involving the bankruptcy estates' tax liabilities, however, the receiver invoked the power of a district court to make a determination of taxes under 11 U.S.C. § 505, with 28 U.S.C. § 1334(b) providing the jurisdictional authority. [6] Although a proceeding under 11 U.S.C. § 505 is exempted from the statutory bar against declaratory judgments with respect to federal taxes, the exception does not apply in this case because the receiver's motion in federal district court does not properly invoke § 505.

---

[6] Section 1334(b) gives district courts original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Section 505 authorizes bankruptcy courts to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid." 11 U.S.C. § 505(a)(1). This court has previously indicated that "[s]ection 505 gives federal courts authority to determine, *in bankruptcy proceedings*, the amount and legality of any tax." *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*, 898 F.2d 122, 124 (10th Cir. 1990) (emphasis added). The receiver cannot invoke § 505 in this case because the proceeding in federal district court is a receivership action, not a bankruptcy proceeding. Even though § 1334(b) confers jurisdiction on a district court to make a determination of tax liability under § 505, the purpose of § 1334(b) is "to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions." *Gruntz v. County of L.A. (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir. 2000). The receiver's request for a determination of taxes is not related to a bankruptcy proceeding under title 11 in federal district court because there is no such proceeding in the district court. Thus, the district court does not have jurisdiction to provide the requested relief pursuant to § 1334(b) because the action neither arose in, nor was related to, a bankruptcy action in the district court. [7]

---

[7] For the same reasons discussed *supra*, 28 U.S.C. § 1334(a) does not confer the requisite jurisdictional authority upon the district court. *See* 28 U.S.C. § 1334(a) (providing district court with original and exclusive jurisdiction of all

Furthermore, the bankruptcy court's attempt to cede jurisdiction over the determination of tax liabilities did not effectuate a transfer of the bankruptcy proceeding to the district court in Colorado pursuant to 28 U.S.C. § 1412, which might have conferred jurisdiction on the district court over a § 505 action. *See* 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."). The bankruptcy court did not address the applicability of § 1412 during its hearing on the bankruptcy trustee's motion to approve final accounts or in its order entered two days after the hearing. The court simply indicated that it would cede jurisdiction over the determination of federal taxes to the district court in Colorado because the receiver had the greatest stake in the outcome. Because the bankruptcy court did not transfer the case, there was no bankruptcy proceeding before the district court which would render proper a motion filed under § 505 in Colorado's federal court. Accordingly, the § 505 exception to the prohibition against declaring the rights of parties with respect to federal taxes does not apply in this case. This court concludes the Declaratory Judgment Act prohibits the district court from declaring that the bankruptcy estates owe no additional federal taxes.

B. Enjoining the IRS

---

cases under title 11).

Having decided that the district court has no authority to determine the corporate tax liabilities in this case, this court must turn to the question of whether the district court may enjoin the IRS from determining the tax liabilities of the five corporations should the government fail to consider the corporate tax returns by the court-imposed deadline. The district court characterizes its order as an attempt to set deadlines and create procedures as it would for any party that comes before it. This court agrees, however, with the government's characterization of the district court's order as an attempt to enjoin the IRS from assessing and collecting taxes.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The Act specifically divests the district court of jurisdiction in order to prevent pre-assessment judicial interference. *See Wyo. Trucking Ass'n, Inc.*, 82 F.3d at 933. A statutory framework exists for the determination of taxes by the IRS. *See, e.g.*, 26 U.S.C. §§ 6201(a) (authorizing and requiring the government "to make the inquiries, determinations, and assessments of all taxes" imposed by the Internal Revenue Code), 6501(a) (requiring the government to assess tax liabilities within three years of tax return filing). The district court may not assist a taxpayer in bypassing these procedures

by imposing deadlines upon the government simply because the IRS is a party before it. Accordingly, this court concludes the district court lacks the jurisdiction to enjoin the IRS from assessing and collecting taxes for failure to expedite its determination of taxes.

IV. CONCLUSION

This court holds the Declaratory Judgment Act bars the district court from declaring that the five corporations owe no additional federal taxes. We further hold the Anti-Injunction Act prohibits the district court from enjoining the IRS from assessing and collecting the corporations' taxes for failure to evaluate their tax returns by the court-imposed deadline. Accordingly, the district court orders requiring the IRS to address the merits of the tax returns for the five corporations and prohibiting the government from determining the tax liabilities for failure to comply with the court-imposed deadline are **REVERSED**.