**In re UAL CORPORATION,
et al., Debtors.**

**No. 02 B 48191.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 3, 2006.

James H.M. Sprayregen, Todd F. Maynes, Marc Kieselstein, David R. Seligman, Erik W. Chalut, James J. Mazza, Jr., Kirkland & Ellis LLP, Chicago, IL, for United Air Lines, Inc.

Patrick J. Fitzgerald, Henry J. Riordan, Washington, DC, for United States of America, Department of the Treasury, Internal Revenue Service.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

These Chapter 11 cases are before the court on the debtors' motion for a determination of tax liability under § 505(a) of the Bankruptcy Code (Title 11, U.S.C.). The debtors seek a ruling that property to be distributed under their proposed Chapter 11 plan is not "wages" subject to federal taxes. The Internal Revenue Service has opposed the motion, not only on its merits, but also on the ground that this court has no jurisdiction to grant the requested relief. As discussed below, the IRS's jurisdictional argument is correct; the debtors' motion must be denied because § 505(a) does not authorize it and therefore the Declaratory Judgment Act, 28 U.S.C. § 2201, prohibits the court from considering it.[1]

### Jurisdiction

District courts have exclusive jurisdiction over bankruptcy cases, pursuant to 28 U.S.C. § 1334(a), and they have concurrent jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The determination of tax liability provided for by § 505(a) "arises under" the Bankruptcy Code, and so is within the district court's jurisdiction. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir.1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").

Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has referred its bankruptcy cases to the bankruptcy court of this district. When presiding over a referred case, the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments in core proceedings within the case. Pro-

1. Because these cases were filed before October 17, 2005, the applicable law is the Bankruptcy Code prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), and all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA codification.

ceedings "arising under" the Bankruptcy Code are core proceedings. *Wood,* 825 F.2d at 96. Thus, if the debtors' motion were properly brought under § 505(a), this court would have jurisdiction to enter a final order deciding it.

■ The IRS has challenged the court's jurisdiction on the ground that the relief requested by the debtors' motion is not within the scope of § 505(a). This court may decide the resulting jurisdictional question. *See Visioneering Const. & Dev. Co. v. United States Fid. & Guar. (In re Visioneering Const.),* 661 F.2d 119, 122 (9th Cir.1981) ("The bankruptcy court clearly has the power in the first instance to determine whether it has jurisdiction to proceed.").

**Factual Background**

The few facts relevant to the pending motion are not in dispute.

On December 9, 2002, United Air Lines, Inc. and twenty-seven related entities (collectively "United") filed the Chapter 11 cases now before the court. In the course of administering these cases, United entered into revised collective bargaining agreements with all of its major unions. Under the new agreements, any plan of reorganization that United proposes or supports must provide for the issuance of securities or other property for distribution to employees represented by the unions.

On September 7, 2005, United proposed a plan of reorganization, and a hearing on this plan is scheduled for January 18, 2006. The plan provides for property to be distributed to union employees pursuant to the revised collective bargaining agreements.

United's pending motion, initially filed in 2004 and renewed in August of 2005, seeks a determination that the property distribution to union employees proposed in its plan is not subject to federal income and employment taxes. The IRS asserts a number of arguments in opposition to the motion, including the jurisdictional argument noted above.

**Discussion**

■ United's motion is straightforward in seeking a declaratory judgment—"an order declaring that the distribution of property to individuals represented by the Debtors' unions pursuant to the Debtors' Plan of Reorganization will not be 'wages.'" Debtors' Motion at 18.[2] In the Declaratory Judgment Act, Congress authorized courts to enter orders of the sort sought by United. The Act provides that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

■ However, this grant of judicial power is subject to two limitations. First, the Act provides that declaratory judgments may only be entered in "a case of actual controversy." *Id.* This restriction reflects a constitutional limit on the jurisdiction of all federal courts. The judicial power accorded by Article III of the Constitution applies only to "cases or controversies," and so does not allow federal courts to decide "abstract, hypothetical or contingent questions." *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). To be justiciable, a controversy must be one that calls for "an adjudication of present right upon estab-

---

**2.** The IRS initially argued that United was required to seek such a declaration through an adversary proceeding rather than by motion. However, the IRS waived this asserted procedural defect. Transcript of Proceedings, May 21, 2004, at 29. Such waivers are effective. *In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990).

lished fact." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

 Second, the Declaratory Judgment Act denies any power to enter a declaratory judgment "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, [or] a proceeding under section 505 or 1146 of title 11." 28 U.S.C. § 2201(a). This exclusion of tax matters from the scope of cases subject to declaratory judgment is not required by the Constitution, but rather is an exercise of Congress's power to define the jurisdiction of lower federal courts. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

The IRS has challenged this court's jurisdiction to award United the relief it seeks under both the "case or controversy" limitation of Article III and the statutory limitation respecting federal tax questions. Because the narrower, tax-focused limitation applies to United's motion, it is not necessary to determine whether a dispute regarding the consequences of a proposed Chapter 11 plan presents a constitutional case or controversy.[3]

### A. The necessity of a proceeding under § 505

Under the tax limitation of the Declaratory Judgment Act, lower federal courts are denied the power to issue declaratory judgments with respect to federal taxes except in three specified proceedings—(1) actions pursuant to § 7428 of the Internal Revenue Code of 1986, (2) proceedings under § 505 of the Bankruptcy Code and (3) proceedings under § 1146 of the Bankruptcy Code. 28 U.S.C. § 2201(a); *Sterling Consulting Corp. v. United States,* 245 F.3d 1161, 1165–66 (10th Cir.2001).

Curiously, the last of these three exceptions—for § 1146 of the Bankruptcy Code—never has effect, since § 1146 applies only to state and local tax matters (and United accordingly makes no claim that it can obtain the declaration it seeks under § 1146).[4] Section 7428 of the Internal Revenue Code, 26 U.S.C. § 7428, is also inapplicable to United's motion, since it deals only with the tax-exempt status of organizations. Thus, in order for this court—or any court—to declare the effect of a proposed bankruptcy plan on federal tax liability, as United requests, that relief must be within the scope of § 505 of the Bankruptcy Code. If § 505 does not govern United's request, then the Declaratory

---

**3.** At least one reported decision supports the IRS's Article III argument, suggesting that the federal tax effects of a proposed Chapter 11 plan do not raise a "present" dispute allowing a declaratory judgment. *See Official Comm. Of Unsecured Creditors v. United States (In re Antonelli),* 1992 WL 435879, at *3 (Bankr.D.Md.1992). On the other hand, Congress itself has expressly authorized declaratory judgments regarding the state and local tax consequences of a proposed Chapter 11 plan. *See* 11 U.S.C. § 1146(d), discussed below.

**4.** The relevant provision of § 1146, subsection (d), states:

The court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title and under the law imposing such tax, of the plan. In the event of an actual controversy, the court may declare such effects after the earlier of—(1) the date on which such governmental unit responds to the request under this subsection; or (2) 270 days after such request.

Judgment Act bars the court from considering it.

B. *The language of § 505(a) and its judicial interpretation*

In relevant part, § 505 provides as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The scope of this provision is problematic. Its only express limitations on the bankruptcy court's jurisdiction to determine "the amount or legality of any tax" are the ones set out in § 505(a)(2), and these limitations deal not with subject matter jurisdiction, but only with the interaction of bankruptcy adjudication with that of other tribunals.[5] Thus, read literally, without regard to its context, § 505(a) would establish bankruptcy jurisdiction to determine any tax dispute, whenever it arose and whomever it involved, effectively creating a "second tax court" in bankruptcy. *See Brandt–Airflex Corp. v. Long Island Trust Co. (In re Brandt–Airflex Corp.),* 843 F.2d 90, 96 (2d Cir.1988) (referring to such a result as "absurd").

Unsurprisingly, the courts have balked at such an unbounded interpretation of § 505(a). For example, "virtually all the courts which have considered the issue have concluded that section 505(a) does not extend the bankruptcy court's jurisdiction

to parties other than the debtor." *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1139 (6th Cir.1991) (collecting authorities); *see also United States v. Prescription Home Health Care, Inc. (In re Prescription Home Health Care, Inc.),* 316 F.3d 542, 547 (5th Cir.2002) ("While [§ 505(a)] speaks of 'any tax', it grants jurisdiction to determine the tax liabilities of the debtor and the estate, not those of third parties . . . .").

But in contrast to this consensus as to *whose* tax issues may be adjudicated under § 505(a), the courts have reached no consensus as to *when* a tax issue must arise in order to be subject to that adjudication. In particular, there is little case law on the issue presented by United's motion— whether § 505(a) allows a court to declare the tax consequences of a proposed chapter 11 plan. A few decisions have stated that § 505(a) does not permit determinations of tax questions that only arise after confirmation of a Chapter 11 plan. *See, e.g., Allis–Chalmers Corporation v. Goldberg (In re Hartman Material Handling Systems, Inc.),* 141 B.R. 802, 812–13 (Bankr.S.D.N.Y.1992):

"Any tax" does not mean any tax of any entity at any point in time. . . . [A] general ruling on the post-confirmation tax effects of [an] ownership change that took place pursuant to [a] plan of reorganization . . . is impracticable and § 505 does not provide any authority for this court to grant it. . . . . [N]o preconfirmation finding can finally determine tax issues which do not arise until after confirmation.

---

5. Section 505(a)(2) restricts the bankruptcy court from determining tax matters that (A) were already adjudicated in a judicial or administrative proceeding before the bankruptcy case was filed or (B) involve a claim by the bankruptcy estate to a tax refund that has not been ruled on by the relevant taxing authority and that has been pending for less than 120 days.

*Accord In re Holly's, Inc.,* 172 B.R. 545, 562 (Bankr.W.D.Mich.1994) ("[E]ven though § 505(a) speaks in broad terms, it does not grant a bankruptcy court subject matter jurisdiction over postconfirmation tax years.").

Some other decisions have exercised jurisdiction to determine postconfirmation tax disputes under § 505(a), but only in the context of a confirmed Chapter 11 plan. *See, e.g., Unsecured Creditors' Comm. of Goldblatt Bros., Inc. v. United States (In re Goldblatt Bros., Inc.),* 106 B.R. 522, 529 (Bankr.N.D.Ill.1989). There appear to be no published decisions applying § 505(a), as United requests, to determine the tax effects of a proposed Chapter 11 plan.[6]

### C. *The context of § 505*

■ The question of when a tax issue must arise in order to be within the scope of § 505(a) is best addressed by considering the context of § 505(a) in the Bankruptcy Code. *See In re Handy Andy Improvement Centers,* 144 F.3d, 1125, 1128 (7th Cir.1998) (warning against ignoring the context of questioned provisions of the Bankruptcy Code). Two contextual considerations compellingly demonstrate that § 505(a) does not apply to tax issues arising after confirmation of a Chapter 11 plan.

The first of these is the placement of § 505(a) in Subchapter I of Chapter 5 of the Bankruptcy Code. This subchapter, titled "Creditors and Claims," deals with the allowance and priority of claims against a bankruptcy estate. To be treated properly in this subchapter, the tax issues subject to bankruptcy adjudication under § 505(a) must be those that generate or offset claims against the estate, thus including matters that arose before the case was filed or during its administration, but not claims based on facts that would only arise after the estate has been terminated by confirmation of a plan. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir.1991) ("Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval.... [T]he debtor is emancipated by the plan of reorganization."); *In re T.S.P. Indus. Inc.,* 117 B.R. 375, 377 (Bankr.N.D.Ill.1990) ("Once a plan has been confirmed ... the bankruptcy estate ceases to exist unless the plan provides otherwise."). Indeed, since a plan of reorganization deals with the claims against the estate that are provided for in Subchapter I of Chapter 5, it would be anomalous for provisions of that subchapter to deal with the effects of a reorganization plan itself. To the contrary, provisions regarding the effect of Chapter 11 plans are included where they would be expected, in Chapter 11 itself—specifically in Subchapter II, "The Plan," and Subchapter III, "Postconfirmation Matters."

---

**6.** Scholarly commentary reflects the unsettled state of the case law. *See, e.g.,* Donald D. Haber, *The Declaratory Powers of Bankruptcy Courts to Determine the Federal Tax Consequences of Chapter 11 Plans,* 3 Am. Bankr. Inst. L.Rev. 407, 417 (1995) ("[T]he ability of the bankruptcy courts to expand the powers of section 505 to determinations regarding the federal income tax consequences of Chapter 11 reorganization plans is by no means certain."); Shu–Yi Oei, *Rethinking the Jurisdiction of Bankruptcy Courts over Post–Confirmation Federal Tax Liabilities: Towards a New Jurisprudence of 11 U.S.C. § 505,* 19 Akron Tax J. 49, 51 (2004) ("[T]he current approach that bankruptcy courts have taken in circumscribing the reach of § **505 over liabilities that may arise after the plan has been confirmed and discharged is unsatisfactory.**"); Jack F. Williams, *National Bankruptcy Review Commission Tax Recommendation: Notice, Jurisdiction, and Corporate Debtors,* 14 Bankr.Dev. J. 261, 270 (1998) ("As to postconfirmation tax matters, the authorities are in disagreement.").

Second, as noted above, one of the provisions in Subchapter III of Chapter 11, § 1146(d), provides explicit authority for the court to declare the tax consequences of a proposed plan, but only with respect to state and local taxation. *See supra* note 4. If determinations of the "amount or legality of any tax," provided for in § 505(a), included declarations of the consequences of a proposed plan, then § 1146(d) would either be surplusage (providing an unnecessary procedure for declaring the tax consequences of plans in light of § 505(a)) or else a limitation (as to state and local taxes only) on a general declaratory power provided for in § 505(a).[7]

■ Neither of these possibilities produces a reasonable reading of § 1146(d). First, interpretations that produce surplusage are to be avoided. *See United States. v. Hernandez*, 79 F.3d 584, 596 (7th Cir.1996). Second, if § 1146(d) were a limitation on a power otherwise granted by § 505 to declare future tax consequences— protecting taxing authorities from being required to render decisions about proposed plans without sufficient time for consideration—then § 1146(d) would be expected to contain some reference to the power it was limiting (such as a phrase stating that it applied "notwithstanding the provisions of § 505(a)"), and the limitations would be expected to apply to protect federal, as well as state and local, taxing authorities. The far more reasonable reconciliation of §§ 505(a) and 1146(d) is that § 505(a) does not provide for declarations regarding future tax consequences, so that the procedure of § 1146(d) is in fact a non-redundant, limited grant of authority to make such declarations.

Read in context, then, § 505(a) does not encompass the relief sought by United.

### D. *The legislative history*

In light of the clear indication of its meaning given by the context of the Bankruptcy Code, a review of the legislative history of § 505 may be unnecessary. Nevertheless, legislative history confirms that determinations of the tax consequences of Chapter 11 plans are not within the scope of § 505.

Prior to the Code, it was established that courts had no jurisdiction to declare the tax consequences of reorganization plans. *See United States v. Brock (In re Wingreen Co.)*, 412 F.2d 1048, 1051 (5th Cir.1969) (noting that the Declaratory Judgment Act, then in effect, "specifically precluded" declaratory judgments regarding federal taxes, without exceptions for bankruptcy proceedings). The predecessor of § 505— § 2a(2A) of the Bankruptcy Act of 1898, former 11 U.S.C. § 11(a)(2A)—applied only to existing, not future, tax disputes. It provided that

---

7. United seeks to avoid this conclusion by arguing that "tax consequences" under § 1146(d) describes a different set of issue than the "amount or legality of any tax" treated by § 505(a). However, questions about the "tax consequences" of a plan can easily be phrased as issues involving the amount or legality of a tax. For example, in the Debtors' Objection to the IRS's Motion to Dismiss (at 7), United asserts that the question of whether a plan would limit the debtor's future use of net operating losses is a "tax consequence" that does not involve "the amount or legality of any tax." But the future availability of NOLs would certainly affect the amount of taxes that the debtor would be required to pay after plan confirmation. And indeed, in another of its briefs, United acknowledged that under its reading, "the plain language of Section 505(a)(1) gives bankruptcy courts the authority to determine *any* tax issues." Debtor's Reply in Support of Their Motion for Determination of Tax Liability under 11 U.S.C. § 505 at 12 (emphasis in original). Thus, under United's reading, § 505(a) is indeed either duplicated or limited by § 1146(d).

"courts of bankruptcy" had jurisdiction both to determine the amount and legality of "any unpaid tax" not previously adjudicated and to authorize appeals of "any tax, whether or not paid," that had been previously adjudicated.[8] By dealing only with unpaid taxes and tax questions that had been adjudicated, § 2a(2A) had no application to the future tax consequences of reorganization plans and created no conflict with the then extant version of the Declaratory Judgment Act.

As originally proposed, § 505 of the Code was intended to retain the basic scope of the pre-Code power to adjudicate tax issues.[9] The House and Senate Reports that accompanied the original legislation make this clear, discussing § 505 as follows:

> Subsections (a) and (b) are derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act, added in 1966. They permit determination by the bankruptcy court of any unpaid tax liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case, and the prosecution by the trustee of an appeal from an order of such a body if the time for review or appeal has not expired before the commencement of the bankruptcy case.

H.R.Rep. No. 95–595, at 356 (1977); S.Rep. No. 95–989, at 67 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6312, 5787, 5853.

The Senate Finance Committee later proposed amendments broadening the scope of the existing tax disputes that could be adjudicated under § 505(a) and (b) to include disputes over the estate's entitlement to a tax refund. See S.Rep. No. 95–1106, at 10 (1978). The Committee accomplished this by adopting a new § 505(a), combining former subsections (a) and (b) into a new subsection (a), which allowed the court to determine "the liability of the debtor or the estate (i) for any tax, whether or not previously assessed or paid; and (ii) the amount of any offset or counterclaim to or net overpayment of, the same tax for the same taxable period." This new language—expressly limit-

---

8. The complete text of § 2a(2A) provided for jurisdiction to:

Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.

9. Section 505 of both H.R. 8200, 95th Cong. (1977) and S. 2266 (as reported by the S. Comm. on the Judiciary, July 14, 1978), contained identical subsections (a) and (b), as follows:

(a) The court may determine the amount or legality of any unpaid tax, whether or not previously assessed, that has not been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

(b) The trustee may prosecute an appeal or review of adjudication by a judicial or administrative tribunal of competent jurisdiction of any tax, whether or not paid, if the time for appeal or review, as the case may be, of such adjudication has not expired before the date of the filing of the petition.

The two bills had different versions of a subsection (c), but each provided procedures for an audit of taxes incurred during the administration of a bankruptcy case, with the bankruptcy court authorized to resolve any dispute.

ed to determinations of the debtor's or the estate's liability—plainly did not encompass the future tax effects of proposed reorganization plans. The Committee also substantially revised the provisions for an audit of taxes arising during bankruptcy administration and moved those provisions to a new subsection (b). The Committee's amendments were accepted when the Senate passed its version of H.R. 8200.

The amended Senate version of § 505 was reconciled with the House version as part of a series of agreements between the Senate and House managers, agreements that were explained in a set of identical floor statements. In discussing the language of § 505(a) that was ultimately enacted, these statements reflect that the provision of § 505(a) allowing bankruptcy court determination of the "legality or amount of any tax" permits the court to adjudicate (1) "any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate," and (2) "the amount of [a] tax refund claim by the trustee." 124 Cong. Rec. 32413, 34013 (1978) ("Authority of bankruptcy court to rule on merits of tax claims"). Nothing in the compromise language, then, changed the principle in place throughout the legislative process— that § 505(a) would only allow adjudication of existing tax liabilities or refund claims.[10]

At the same time, the history of § 1146(d) reflects the understanding that it covers issues completely distinct from those that § 505(a) addresses, neither overlapping nor limiting that provision. As first considered by the House Judiciary Committee, § 1146(d) allowed for determination of federal as well as state and local tax consequences of Chapter 11 plans and was described in the Committee's report as follows:

> Section 1146(d) ... is the procedural vehicle permitting an expedited declaration of the tax effects of a reorganization plan. In order to give taxing authorities a chance to dispose of the issues, the court may permit the plan's proponent to request a taxing authority to declare the tax effects of the plan. After the authority responds, or in any event after 270 days after such request, the court may bind the taxing authority by declaring the tax effects, in the event of an actual controversy. The provision is necessary to facilitate acceptance of plans and does not impose an unreasonable burden on Federal, State, or local taxing authorities.

H.R.Rep. No. 95–595, at 284 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6241. By referring to § 1146(d) as "the" procedural vehicle for declarations of the tax consequences of proposed plans, the report suggests that this procedure is unique. Nothing in the report's discussion of § 1146(d) suggests any overlap or connection with § 505(a), even though, in the paragraph preceding its description of § 1146(d), the report points out and resolves a potential conflict between another subsection of § 1146 and § 505. *Id.* And, of course, if § 505(a) already allowed determination of the tax consequences of a plan, § 1146(d) would not be "necessary" to facilitate plan acceptance.

As actually reported by the House Judiciary Committee, § 1146(d) was limited to allowing determinations of the state and local tax consequences of a Chapter 11 plan. This was done "to avoid any possible jurisdictional conflict with the Ways

---

10. The floor statements also describe compromises regarding bankruptcy court determination of taxes arising from estate administration, set out in § 505(b). 124 Cong. Rec. 32414, 34014 ("Audit of trustee's returns").

and Means Committee," which was then considering its own bankruptcy tax legislation. *Id.* at 275, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6232.

The Senate Judiciary Committee's reported version of § 1146(d), like the original House version, applied to federal as well as state and local tax issues, but the Senate Finance Committee deleted it before passage by the Senate. *See* S.Rep. No. 95–1106, at 28 (1978). As described in the managers' floor statements, the compromise version of § 1146(d) ultimately included in the Bankruptcy Code provided for court determination of the tax consequences of a plan, but limited to state and local tax questions and to questions of law. 124 Cong. Rec. 32418, 34018 (1978). The floor statements again reflect no consideration of any overlap or limitation of any right accorded by § 505(a) to judicial determination of the tax consequences of a Chapter 11 plan.

Finally, H.R. 8200, as passed, also amended the Declaratory Judgment Act to allow for declarations under §§ 505 and 1146. The reports of both the House and Senate Judiciary Committees describe this change the same way, indicating an intent to allow declarations of future tax consequences only under § 1146(d), not § 505(a), and explaining the reference to § 505 as intended to address declarations under § 505(c) of the taxes generated by estate administration:

> This section amends 28 U.S.C. 2201, relating to declaratory judgments, to except from the prohibition on declaratory judgment on tax matters, the two instances provided for under the bankruptcy code, relating to relief of a trustee from personal liability for taxes owing by the estate (11 U.S.C. 505(c)) and the tax effects of a reorganization (11 U.S.C. 1146(d)).

H.R.Rep. No. 95–595, at 450 (1977). S.Rep. No. 95–989, at 158 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6405, 5787, 5944 contains substantially identical language.

In sum, the legislative history of the Bankruptcy Code emphatically supports the conclusion that § 505(a) does not grant bankruptcy courts power to determine the tax consequences of a Chapter 11 plan.

### E. *Policy considerations*

Finally, United raises policy considerations—arguing that "[t]he IRS's jurisdictional arguments put United in a dilemma wholly inconsistent with the 'fresh start' policy of bankruptcy," by prolonging an uncertainty as to whether United needs to engage in payroll withholding in connection with the property transfers to union members proposed in its plan. And, certainly, parties in Chapter 11 cases could be benefited by obtaining binding determinations of the tax consequences of proposed plans.

However, there are also countervailing policies. In its report recommending elimination of § 1146(d), the Senate Finance Committee expressed the belief that "it is unfair to permit the bankruptcy court to issue a declaratory judgment ... on tax matters for bankrupt individuals and corporations when other taxpayers generally do not have similar rights, particularly in reorganizations outside bankruptcy of financially shaky companies." S.Rep. No. 95–1106, at 28 (1978). The Committee noted that a Chapter 11 debtor, like other taxpayers contemplating a proposed transaction, can seek to "obtain an advance ruling from the Internal Revenue Service on the Federal tax effects of the proposed reorganization plan." *Id.*

Moreover, to the extent that bankruptcy courts exercise jurisdiction to declare the federal tax consequences of reorganization plans under § 505(a), there is the potential for adjudication by a non-expert tribunal

with inadequate time for the IRS to consider and present the issues, since the 270–period prescribed in § 1146(d) would not be applicable.

Thus, the policy considerations here are not one-sided. To the contrary, one commentator has described the question of whether bankruptcy courts can declare the tax consequences of proposed Chapter 11 plans as "a violent clash between bankruptcy and tax policies." Williams, *supra* note 6, at 274. In such a situation, it is for Congress to determine the appropriate policy balance. And Congress has done so—by excluding the federal tax consequences of Chapter 11 plans from the scope of the bankruptcy courts' declaratory power under § 1146(d), and by according no such power under § 505(a), thus leaving such declarations subject to the exception for federal tax issues set out in the Declaratory Judgment Act.

### Conclusion

For the reasons stated above, this court lacks jurisdiction to grant United's motion. Accordingly, by separate order, the motion will be denied.