**In re AGWAY, INC., Debtor.**

**In re Agway General Agency, Inc., Debtor.**

**In re Brubaker Agronomic Consulting Service LLC, Debtor.**

**In re Country Best Adams, LLC, Debtor.**

**In re Country Best–Deberry LLC, Debtor.**

**In re Feed Commodities International LLC, Debtor.**

**Nos. 02–65872 through 02–65877.**

United States Bankruptcy Court, N.D. New York.

Aug. 14, 2009.

Menter, Rudin & Trivelpiece, P.C., Attorneys for Liquidating Trustee, Jeffrey A. Dove, Esq. of Counsel, Syracuse, NY.

Karen Wozniak, Dept. of Justice, Tax Division, Washington, DC, William Larkin, Esq., U.S. Attorney's Office, Syracuse, NY, for U.S.

Guy A. Van Baalen, Esq., Assistant U.S. Trustee, Utica, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

DIANE DAVIS, Bankruptcy Judge.

Presently under consideration by the Court is a motion ("Motion") filed on November 26, 2008, by D. Clark Ogle, Trustee of the Agway Liquidating Trust ("Liquidating Trustee"), pursuant to § 505(a) and (b) of the U.S. Bankruptcy Code,[1] 11 U.S.C. §§ 101–1330 ("Code"), seeking an order determining that the Agway, Inc. ("Agway") estate incurred no excise tax liability as a result of the sale of its ownership interest in Agway Widewaters Corporation ("AWC"). The Motion was originally scheduled to be heard on December 18, 2008, but was adjourned to January 27, 2009, due to scheduling conflicts of the interested parties. The Motion was again adjourned on the consent of the parties to February 24, 2009, to allow the United States Department of Justice/Tax Division ("United States") further time to review the issues. On February 19, 2009, a response was filed on behalf of the United States requesting that the Motion be dismissed based on a lack of jurisdiction.

The Motion was heard at the Court's regular calendar in Utica, New York, on

---

**1.** Because the case was filed before October 17, 2005, the applicable law is the Bankruptcy Code prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA codification.

February 24, 2009, and adjourned to March 24, 2009. On consent of the parties, the Motion was again adjourned to April 28, 2009 to allow the United States additional time to review the issues. The Court heard oral argument on April 28, 2009. On May 26, 2009, after hearing additional argument, the Court reserved decision on the limited issue of standing and jurisdiction.

### JURISDICTIONAL STATEMENT

▆ The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1142, and the Order dated April 28, 2004 confirming the plan of reorganization in this case (the "Confirmation Order"). Because the United States has challenged the Court's jurisdiction on the ground that the relief requested by the Liquidating Trustee's Motion is not within the scope of Code § 505, the Court may decide the resulting jurisdictional question. *See In re UAL Corp.*, 336 B.R. 370, 372 (Bankr.N.D.Ill. 2006).

### FACTUAL BACKGROUND

The following facts were undisputed with respect to this Motion or were found to be undisputed in prior decisions of this Court:

Agway, along with several of its wholly-owned subsidiaries (collectively, the "Debtors"), filed for bankruptcy protection pursuant to chapter 11 of the United States Bankruptcy Code on October 1, 2002. The Debtors' Second Amended Joint Plan of Liquidation (the "Plan") was confirmed by Order dated April 28, 2004, with an effective date of May 1, 2004 ("Confirmation Order"). Pursuant to the Confirmation Order, the Liquidating Trustee was appointed to liquidate and distribute the Liquidating Trust Assets and Claims.

The Plan provides that the "Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust ... under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust."[2] *See* Plan, § 7.01(f); *see also* Art. XIII(q) of the Plan (providing for the Court's retention of jurisdiction to determine matters under Code § 505 for all taxable periods throughout the termination of the Liquidating Trust). According to the Liquidating Trustee, the IRS was provided with a copy of the Plan and failed to object to its confirmation.

Under the terms of the Plan, the Employees' Retirement Plan of Agway, Inc. was to be terminated, effective as of May 31, 2004. According to the Liquidating Trustee, at some point in time, Agway was presented with an alternative transaction structure whereby Agway would transfer sponsorship of the Retirement Plan to AWC, a wholly-owned subsidiary of Agway, and then sell 100% of the stock of AWC to Capstone Consultants, LLC ("Capstone"). The United States, including the IRS, appeared at a regular motion term of this Court on September 25, 2007, and did not oppose the transfer of sponsorship of the Retirement Plan to AWC and ultimately the transfer of the stock of AWC to Capstone (hereinafter the "Capstone transaction"). The IRS reserved its rights with respect to determining whether the Retirement Plan is a "qualified plan." *See* Order, signed October 10, 2007 (Dkt. No. 6994).

**2.** On March 30, 2009, the Court signed an Order extending the term of the Liquidating Trust to May 1, 2011, without prejudice to the Liquidating Trustee seeking further extensions (Dkt. No. 7726).

By Order, dated October 10, 2007 (Dkt. No. 6995), the Court authorized that the Plan be modified to continue the Pension Plan and approved the Capstone transaction. On or about June 6, 2008, the Liquidating Trustee indicates that Agway closed on the Capstone transaction and transferred 100% of the outstanding capital stock of AWC to Capstone. The Retirement Plan was not terminated and apparently remains an ongoing plan.

On July 11, 2008 Agway filed its IRS Form 5330, Return of Excise Taxes Related to Employee Benefit Plans, reporting a "0" excise tax liability arising from the Capstone transaction. On the same day, Agway filed a "Request for Prompt Determination," pursuant to Code § 505(b) and IRS Revenue Procedure 2006–24, with respect to the Form 5330, asking that it determine whether the AWC/Capstone transaction resulted in a reversion of Plan assets under Internal Revenue Code ("IRC") § 4980. *See* Exhibit "A," attached to the Motion.

On September 15, 2008, Agway filed its IRS Form 1120–C, U.S. Income Tax Return for Cooperative Associations for Agway's fiscal year ending June 30, 2008, reporting a tax liability of $385,693, which it paid. According to the Liquidating Trustee, the tax liability "was primarily caused by the receipts from the Capstone transaction and the limitation on the ability to fully utilize net operating loss carry forwards due to the Alternative Minimum Tax." *See* Motion at ¶ 14. Also on September 15, 2008, Agway filed a "Request for Prompt Determination," pursuant to Code § 505(b) and IRS Revenue Procedure 2006–24, with respect to its Form 1120–C Return, again asking that the IRS determine whether the AWC/Capstone transaction resulted in a reversion of Plan assets under IRC § 4980. *See* Exhibit "B," attached to the Motion.

## DISCUSSION

As of the hearing on May 26, 2009, the IRS had not advised Agway whether or not it agreed or disagreed with either Form 5330 or Form 1120–C. *See also*, Response of United States (Dkt. No. 7638) at ¶ 17 (acknowledging that the IRS had not responded to the Requests for Prompt Determination). The Liquidating Trustee indicates concern "that absent an affirmative determination from this Court, the IRS could later seek to 'reopen' the tax issue and seek to assess an additional liability against the estate." *See* Motion at ¶ 16. Thus, the Liquidating Trustee seeks a determination that "the excise tax and income tax liabilities as reported by Agway on the IRS Form 5330 and 1120–C Returns are accurate" in order for the Liquidating Trustee "to make distributions of the proceeds of the Capstone transaction without having to establish any reserve for those taxes." *See* Motion at ¶ 18.

The United States takes the position that Agway is barred from the relief it seeks pursuant to Code § 505(a) based on sovereign immunity, as well as the Declaratory Judgment Act. In addition, the United States argues that because it has not disputed the tax liabilities reported on the post-confirmation returns, there is no "case or controversy" over which the Court has jurisdiction. It asserts that the Liquidating Trustee is seeking a comfort order as to possible future harm should the IRS ultimately dispute the tax liabilities. According to the United States, "[w]hat the liquidating trustee thus seeks in the guise of a § 505(a) determination is really a § 505(b) discharge, which, as already demonstrated, only applies whan [sic] a bankruptcy trustee files a return reporting the tax liability of a bankruptcy estate." Response of IRS, filed February 19, 2009 (Dkt. No. 7638) at 13. The Unit-

ed States points out that "[t]he IRS, by statute, has at least three years to examine the tax returns of an entity other than a bankruptcy estate, including those of a post-confirmation bankruptcy debtor and the courts have no authority to truncate that period through a declaratory judgment or injunction." *Id.,* citing *Sterling Consulting Corp. v. United States,* 245 F.3d 1161 (10th Cir.2001).

In addition, the United States contends that Code § 505(b) only applies to determinations sought by the trustee of the bankruptcy estate and does not apply to a post-confirmation transaction and post-confirmation tax returns and requests made by a post-confirmation debtor, namely Agway, Inc. It observes that in this case the Motion was filed by "the trustee of a liquidating trust created under state law to carry out the provisions of a confirmed Chapter 11 plan that vested all property in the debtor and then transferred it to the liquidating trust." *See* Response of the United States at 9.[3] Thus, the United States takes the position that the relief sought "goes beyond the waiver of sovereign immunity in section 505(b) and, consequently, the Court lacks jurisdiction to entertain relief under § 505(b)." *Id.* at 9–10.

### A. *Standing of the Liquidating Trustee*

As noted previously, the United States argues that Code § 505(b) does not apply to determinations sought by a trustee of a liquidating trust created under state law to carry out the provisions of a confirmed Chapter 11 plan by which all property was vested in the debtor and

then transferred to the liquidating trust. This issue was recently addressed in *In re PT–1 Communications, Inc.,* 403 B.R. 250 (Bankr.E.D.N.Y.2009). In that case, the IRS argued there was no "estate" for which the court could determine the right to a refund pursuant to Code § 505 and that a claim pursuant to Code § 505(b) could only be brought preconfirmation by a trustee/debtor in possession. The court in *PT–1 Communications* rejected this argument, holding that "to preclude a § 505 claim from being asserted by a liquidating trustee appointed pursuant to a plan, would fly in the face of the Bankruptcy Code §§ 1123(b)(3)(B) and 1141. Those sections explicitly permit a plan to designate a representative of the estate to enforce a claim of the debtor or the estate, and provide for the vesting of the estate's property in an entity other than the debtor." *Id.* at 265. The court concluded that the liquidating trustee, having been designated in the debtors' plan to enforce certain claims of the estate, had standing to assert certain counterclaims for refunds for the 2001 tax year. *Id.*

In the case now under consideration, the Court concludes that the Liquidating Trustee has standing to file a motion pursuant to Code § 505 post-confirmation, particularly in light of § 7.01(f) of the Plan, to which no objection was filed by the IRS, expressly granting him such standing. However, concluding that the Liquidating Trustee has standing to file a motion, does not address the issue of the Court's jurisdiction to grant the requested relief therein.

---

**3.** As one court has commented, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.... Unless otherwise provided by the plan or order confirming the plan, 'the confirmation of a plan vests all of the property of

the estate' in the reorganized debtor. 11 U.S.C. § 1141(b)." *In re Northwestern Corp.,* 324 B.R. 529, 533–534 (Bankr.D.Del.2005). In this case, Agway is not a reorganized debtor and under the terms of the Confirmation Order, the Liquidating Trustee was assigned the role of liquidating the assets of Agway's estate.

## B. Sovereign Immunity

■■■ In matters involving the United States, the issue of sovereign immunity is critical. Waiver of sovereign immunity is a prerequisite to subject matter jurisdiction. *Id.* at 262, citing *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. and Urban Dev.,* 175 F.3d 132, 139 (2d Cir.1999). The filing of a proof of claim by a government entity serves as a waiver of sovereign immunity as to claims by the debtor arising out of the same transaction. *See PT–1 Communications,* 403 B.R. at 262 (citing *Gordon Sel–Way, Inc. v. United States (In re Gordon Sel–Way, Inc.),* 270 F.3d 280, 285–86 (6th Cir. 2001)). In this case, the Liquidating Trustee takes issue with the assertion by the United States that the IRS had not filed a proof of claim. *See* Liquidating Trustee's Reply, filed April 27, 2009 (Dkt. No. 7768). However, for there to be a waiver of sovereign immunity, the critical issue is whether any of the proofs of claim arose out of the same transaction as the claim being asserted by the Liquidating Trustee. In this case, there is no indication that any of the proofs of claim filed on behalf of the IRS, as identified by the Liquidating Trustee, arose from the post-confirmation Capstone transaction.

■■■ In the context of a bankruptcy case, it is important to note that statutorily, Code § 106(a) expressly provides that sovereign immunity is abrogated as to a governmental unit with respect to Code § 505. The fact that sovereign immunity has been abrogated does not necessarily mean that the Court has jurisdiction to grant the requested relief, however.

## C. The Declaratory Judgment Act

■■■ While the Liquidating Trustee indicates that he is seeking a determination that the Agway estate incurred no excise tax liability in connection with the Capstone transaction, the Court interprets his request as one seeking an order declaring that there is no tax liability, as asserted on Form 5330, filed with the IRS on July 11, 2008. The Declaratory Judgment Act provides that declaratory judgments may only be entered in "a case of actual controversy." 28 U.S.C. § 2201. In addition, the Declaratory Judgment Act denies the entry of a declaratory judgment in connection with actions involving taxes, except if brought under § 7428 of the Internal Revenue Code ("IRC"), or a proceeding under Code § 505 or Code § 1146. *See UAL Corp.,* 336 B.R. at 373, citing 28 U.S.C. § 2201(a). Section 7428 of the IRC deals with the tax exempt status of organizations, and Code § 1146 applies only to state and local tax matters. Thus, if Code § 505 does not govern the Liquidating Trustee's request in the Motion, then the Declaratory Judgment Act bars the Court from considering it.

## D. Code § 505

As noted by the court in *UAL Corp.,* read literally, Code § 505(a) "would establish bankruptcy jurisdiction to determine any tax dispute, whenever it arose and whomever it involved, effectively creating a 'second tax court' in bankruptcy." *Id.* at 374, citing *Brandt–Airflex Corp. v. Long Island Trust Co. (In re Brandt–Airflex Corp.),* 843 F.2d 90, 96 (2d Cir.1988) (referring to such a result as "absurd" and "unintended" while discussing whether Code § 505(a) was limited to the liabilities of debtors and not other third parties).

The court in *UAL Corp.* was asked to declare the tax consequences of a *proposed* chapter 11 plan. It first analyzed the issue of when a tax issue must arise in order to be within the scope of § 505(a). The court observed the placement of Code § 505(a), noting that the subchapter is ti-

tled "Creditors and Claims" and, accordingly, found that

> [t]o be treated properly in this subchapter, the tax issues subject to bankruptcy adjudication under § 505(a) must be those that generate or offset claims against the estate, thus including matters that arose before the case was filed or during its administration, but not claims based on facts that would only arise after the estate has been terminated by confirmation of a plan.

*UAL Corp.*, 336 B.R. at 375.

The court determined that " § 505(a) would only allow adjudication of existing tax liabilities or refund claims." In its analysis, it observed that Code § 1146(d), referenced in the Declaratory Judgment Act, while allowing for determinations of the state and local tax consequences of a Chapter 11 plan, did not authorize a determination of future tax consequences on the Federal level. *Id.* at 379. Accordingly, the court found that "by excluding the federal tax consequences of Chapter 11 plans from the scope of the bankruptcy courts' declaratory power under § 1146(d), and by according no such power under § 505(a), . . . [it left] such declarations subject to the exception for federal tax issues set out in the Declaratory Judgment Act." *Id.* at 380.

In *Allis–Chalmers Corp. v. Goldberg (In re Hartman Material Handling Systems, Inc.)*, 141 B.R. 802 (Bankr.S.D.N.Y.1992), the debtor's chapter 11 plan had been confirmed. The court acknowledged that "Congress has given the bankruptcy courts the responsibility for determining whether a reorganization plan is proper, including tax considerations." *Id.* at 809. Allis–Chalmers, the reorganized corporate debtor, sought a ruling in the form of a declaratory judgment from the court "on the post-confirmation tax effects of the ownership change that took place pursuant to its plan of reorganization." *Id.* at 813. In its discussion, the bankruptcy court in *Allis–Chalmers* expressed concerns that

> "any ruling would have to consider post-confirmation events which were not even known at the time of confirmation to determine a speculative future tax liability of the former Debtor. Such a ruling would establish a precedent for a former debtor to return to bankruptcy court to have any and all of its future tax consequences determined. Neither § 505 nor any other provision of the Code provide authority for such a result."

*Id.* at 812–13.

The court in *Allis–Chalmers* indicated that "it would be improper for this court to determine in advance the post-confirmation NOL [net operating losses] tax rights of a former debtor who has not yet attempted to use its NOLs." *Id.* at 812. It concluded that there could be no pre-confirmation finding determining tax issues that did not arise until after confirmation and dismissed Allis–Chalmers' complaint seeking declaratory relief without prejudice "to A–C's right to assert this [c]ourt's confirmation finding in response to any future IRS action. . . ." *Id.* at 814–15.

Another case of interest to the issue now under consideration by this Court is *PT–1 Communications* in which the liquidating trustee asserted a "counterclaim" to a proof of claim filed on behalf of the IRS in the case. The debtors had filed Chapter 11 petitions on March 9, 2001, and their plan was confirmed on November 23, 2004. The plan provided that certain assets, rights and powers were transferred to a liquidating trust. *PT–1 Communications*, 403 B.R. at 256. The IRS filed several requests for payment of taxes and penalties and interest, including a request for administrative payment for taxes and interest covering March 9, 2001–December 31, 2001. The trustee filed a counterclaim

seeking, *inter alia,* a refund for the 2001 tax period of March 9, 2001–December 31, 2001, based on carryforwards and carrybacks of operating losses incurred during the first quarter of 2001 and the 1999, 2000 and 2002 tax years. *Id.* The issues before the court involved claims and counterclaims that arose *prior* to confirmation of the debtors' plan and the appointment of the liquidating trustee, not *after* confirmation as is the case herein.

### E. Subject Matter Jurisdiction

 "Subject matter jurisdiction 'cannot be conferred by consent' of the parties ... Where a court lacks jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization ... [I]f a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating that it has jurisdiction in a confirmation or other order." *In re Resorts Int'l, Inc.* 372 F.3d 154, 161 (3rd Cir.2004); *see also In re U.S. Brass Corp.,* 301 F.3d 296, 303 (5th Cir. 2002) (stating that "[Code] § 1142(b) does not confer substantive rights so much as it empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan"). In this case, the potential liability for which the Liquidating Trustee seeks a determination did not exist at the time Agway filed its petition. Nor was it originally contemplated in the Plan, as originally confirmed on April 28, 2004. The transaction which serves as the basis for any possible liability was authorized by Order of the Court on October 10, 2007. Hence, it involves the tax effects of a transaction that occurred *after* confirmation of Agway's plan. The fact that the Capstone transaction was approved by the Court by means of the post-confirmation modification of Agway's Plan, does not confer subject matter jurisdiction on the Court.

Based on its review of the parties' briefs, as well as the cases discussed above, the Court finds that it is without jurisdiction pursuant to Code § 505(a) to declare that the Agway estate incurred no excise tax liability in connection with the Capstone transaction. The Court does not believe that Congress intended that Code § 505 be used to determine tax liability arising after confirmation under these circumstances.

While the court's observations in *Allis–Chalmers* arose under different circumstances than those now before this Court, nonetheless, the Court finds them useful in considering the arguments of the parties, particularly if one were to view the Liquidating Trustee as someone "returning to the bankruptcy court" for a determination regarding the future tax consequences of the Capstone transaction-exactly the situation about which the court in *Allis–Chalmers* expressed concerns. As in *Allis–Chalmers,* there had been no action by the IRS at the time of the Motion. The Court notes that the IRS has not expressed any disagreement with the reported liabilities. It simply seeks to reserve its right to dispute them in the future. Thus, there is no actual controversy over which the Court has subject matter jurisdiction. "Whenever a proceeding is brought in a bankruptcy court, there must be jurisdiction over each dispute within the proceeding." *In re Fisher,* 151 B.R. 895, 899 (Bankr.N.D.Ill. 1993). The Court is without authority to render an advisory opinion on a *potential* controversy. *See Matter of FedPak Systems, Inc.,* 80 F.3d 207, 211–12 (7th Cir. 1996) (indicating that "[a] bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions or to decide abstract, academic or hypothetical questions."); *see also UAL Corp.,* 336 B.R. at 372 (pointing out that federal courts are prohibited from deciding "abstract, hypothetical or contingent questions"); *In re Popa,* 218 B.R. 420, 423

(Bankr.N.D.Ill.1998) (noting that a federal court may only decide actual cases or controversies); *In re Grand Chevrolet, Inc.,* 153 B.R. 296, 299 (C.D.Cal.1993) (indicating that pursuant to Code § 505, a bankruptcy court has no jurisdiction to decide issues that are antecedent to the determination of tax liability).

Consistent with this conclusion, the Court finds it is also without jurisdiction to make a finding that the Liquidating Trustee, the Debtor and Agway Liquidating Trust are discharged from any liability for such taxes pursuant to Code § 505(b).

Based on the foregoing, it is hereby

ORDERED that the Liquidating Trustee's Motion is denied.

**IT IS SO ORDERED.**